**FILED**

FEB 17 2026

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

1. Kris K. Agrawal, a Working Interest Owner and aggrieved party,
             Plaintiff,

        vs.                              Case No.: 2026-CIV_____

26 CV - 0 87 SEH - MTS

2. U.S. Postal Service (USPS), 3. Baron Haygood, 4. William Wallace, 5. Oklahoma State Treasurer, 6. Oklahoma Corporation Commission, 7. David Lansdale, 8. Tyler Trout, 9. Clark Dexter, 10. Brent Smith, 11. Everette Plummer, 12. Robert Frost, 13. Diana Blackwell, 14. Billy Winsette, 15. Ott Holleman, Roy Brigge individually and Trustee of Roy R. Brigge Revocable Trust, 17. James Martin, 18. American Heritage Investment Capital, 19. Rafael Pinedo, 20. Silverton Energy, Inc, 21. Bill Malloy of Ada Energy Services, LLC, 22. Sergio Ortega of Surge Plug and Abandon, LLC, 23. John or Jane Does, 1 to 6.
             Defendant(s).

**COMPLAINT**

VOID ORDERS DUE TO LACK OF NOTICE, INVERSE CONDEMNATION, TORT CLAIM, THEFT, GRAND LARCENY, CONVERSION, DECLARATORY RULING, RETURN OF STOLEN PROPERTY, BREACH OF CONTRACT, REQUEST FOR INJUNCTIONS AND FOR AN ORDER TO OKLAHOMA CORPORATION COMMISSION TO TRANSFER WELLS TO DRILL BB USA FUND, OPERATOR NO. 25146 QUALIFIED AS OF AUGUST 15, 2025.

**I. JURISDICTION and VENUE**

1.      Plaintiffs and Defendants are residents of Oklahoma, EXCEPT American Heritage Investment Capital, Rafael Pinedo, and Silverton Energy, Inc, who are residents of Texas. Cause of action arose in Tulsa County, Oklahoma, within two years, amount of Claim exceeds $75,000, Federal Jurisdiction in Northern District of Oklahoma is proper. United States Postal Service is made a Defendant whose Mail Man used Covid 19 to sign for PHILL SELLS, in Tulsa County which is the basis of this Complaint being filed in this Court. Plaintiff used IRA money to fund oil well projects which are lost.

**II   FACTS AND PARTIES**

2.      On June 12, 2024, USPS Mail Man signed the name of Phill Sells on a Green Card which was to serve a Complaint of Oklahoma Corporation Commission against Oil Field Production, Inc. This resulted in a default Judgment revoking its Operating Bond by

1

Fee Paid
19 summons

Order no. 743779, **Exhibit A1** in Exhibit A. Agrawal's 112 wells have been orphaned in 18 Oklahoma Counties.

3.      On February 10, 2026, after months of negotiations, Plaintiff Agrawal went with a Driller from Texas to Red Fork Sand Unit in Creek County, Oklahoma. The Driller wanted to drill multiple oil wells. His location pic was as close to the Cimmaron River where wells have flowed oil to surface. U.S. Army Corps of Engineers owns the Land along Cimmaron River where the Driller intended to drill new wells. **Exhibit B**. Minerals Management Service in Denver receives royalty checks. Royalty Owners live in many U.S States except Alaska and Hawaii.

4.      The Driller's $120,000 truck was stopped by Barron Haygood, telling him that all wells are Orphaned by Oklahoma Corporation Commission (OCC) making them his property. The driller was prohibited from entering the Tank Battery by Haygood. The gate was open.

5.      Haygood riding a Farm Tractor with Disk Harrow covered the County Road He pointed to road to Clark Dexter residence, advising "do not enter." Dexter is my son In-Law and a Corporation Commission Inspector. "In two years, I will own all of the wells." 5. The Driller dropped off Agrawal in Oklahoma City, frustrated, then demanded a Title Opinion.


6.      Red Fork Sand Unit is owned by many Corporations and individuals in the United States. Shut-in Royalty has been tendered.

7.      Since Phill Sells was not served, without notice, OCC revoked the Operating Bond of Oil Field Production, Inc. on or about 30th day of August 2024, by Order no. 743779. A U.S. Postal service Mail man, signed for Phill Sells, under Covid 19, authority. All 112 wells became Orphan, without an Operator. **Exhibit A.**

 8.     Tyler Trout knows the signature of Phill Sells and vacation of Prior Order no's 724083 and 725441 entered on 7th day of February 2023 due to U.S. Postman signing PHILLSELLS CV 19. **Exhibit C.**

9.      Tyler Trout refused and interfered to Vacate Order no. 743779 acquired without Jurisdiction of Administrative Law Judge that caused orphaned wells.

10.     Further, OCC, Brent Smith has refused to transfer Orphan Wells to any Operator, including Burleson Production, since March 15, 2025, and to Drill BB USA FUND since August 15, 2025. **Exhibit D.**

11.    OCC Brent Smith did not transfer wells bought by Agrawal from Bankruptcy of South Creek Petroleum Inc. The prior transfer of October 4, 2023, was withdrawn without notice or authority. These wells are not part of OCC Order No. 743779. **Exhibit E.**

12.    The Oklahoma State Treasurer failed to refund $25,000 to Oil Field Production, Inc, as per OCC Order no. 732011 entered on 7th day of February, 2023 and his refusal to pay or return the Escheat Escrow fund paid to it by the Crude Oil Purchaser of Gibson Sand Unit, alleging that only Royalty Owners are entitled to recover the escheat Funds. There is more than 130 Royalty Owners of which 47 live outside of State, making it impossible for them to demand their share of Royalty earned by Crude Oil Sale from Gibson Sand Unit. **Exhibit F.**

13.    State Treasurer has removed the Amended Petition filed in Oklahoma County District Court Case No. CJ-25- 3259 to Western District of Oklahoma, Federal Petition no is: 5:25 CV -01565-PRW on 12/29/25, **Exhibit G**. This Petition should be removed to Northern District of Oklahoma based in Tulsa.

14.    Clark Dexter is an Inspector hired by OCC and a Former Pumper of Red Fork Sand Unit. He is the son-in Law of Barron Haygood. He Ordered a Crude Transporter to dump the oil back in the Tank Battery which oil was produced when Bond was not revoked. That oil was worth $10,000 then.

15.    Everette Plummer is an OCC Inspector, like Dexter who filed Case No. CJ-22-133 in Garvin County asking to plug the wells when the first Order of OCC was issued due to USPS mailman signed the name of Phill Sells as CV 19. Order no. is 732011 reversed the two prior Orders shutting down all wells including Plummer wells. See **Exhibit C.**

16.    The $25,000 has not been refunded by OCC/State Treasurer. Demand was made but ignored.

17.    Everette Plummer has called many OCC Inspectors to remediate pollution caused by his father, who sold the wells to Agrawal.

18.    To obtain Order no. 743779, Everette Plummer called another OCC Field Inspector III, David Lansdale, who committed Perjury before Administrative Law Judge, Linda Forman on June 28, 2024, about Bromide # 2, Barney Sanders # 2, and Martha # 1 wells found on Everette Plummer property in section 7, T 3N, R 1 West of Garvin County.

19.    All work asked by Lansdale had been completed with precision by three to four men assigned to work on Plummer wells. This also included cementing the road to wells where water stood six inches deep in May 2025. See Affidavit of James St Clair. **Exhibit H.**

20.    Everette Plummer and his brother Carey Plummer have not cashed the shut-in Royalty checks. Other Royalty Owners have cashed their checks.

21. Without authority or Notice, Oklahoma Corporation Commission  Did Plug FIVE wells, (Garner Lillard, C.E. Garner, Cindy Mallory, in East Gibson Sand Unit) in McClain County, Peters 1-28 in Garvin County,  and   Skinner Davis # 5  in Hughes County which will cost Agrawal Four to five  million dollars to redrill**. Exhibit F.** This is a permanent loss of recoverable minerals for which inverse condemnation lies. Federal Funds may have been used to Plug these wells. Oklahoma Corporation Commission is prohibited from plugging any wells, by 17 O.S. § 53, that procedure was not followed. All plugging was done without notice to the Operator or the U.S. Bankruptcy Trustee or the Oil and Gas Lease owner. Four of these wells were plugged in after filing the Tort Claim and Petition for Plugging Peters 1-28 in Garvin County. These plugging were intentional and contumacious for which Punitive damage award is asked.

This Petition is not asserting any Tort Claims against OCC since ninety days have not elapsed after  filing the Tort Claims. OCC asked that those Petitions be transferred to Oklahoma County. Agrawal will ask that those Petitions be transferred and merged in the case herein. Those Claims are embedded due to the postal Mail man signing the Name of Phill Sells, Registered Agent of Oil Field Production, Inc.

22.    Tyler Trout filed the Complaint on behalf of Oil and Gas Conservation Division Director, Robyn Strickland, without her knowledge and permission in writing. Record does not reflect that Robyn Strickland signed off on the Complaint filed against Oil Field Production, Inc. She was a Window Clerk at the Underground Storage Tank Division of OCC. She is now replaced.

23.    Brent Smith may have been prevented by Tyler Trout not to Transfer the wells and to keep them Orphan so OCC can earn Carbon Credit by Plugging the wells. Brent Smith said that well Transfer was under legal review.

24.    Robert Frost sold all of the Pump Jacks from NE/4 of section 32, T 14N, R 14 East of Okmulgee County. He erected an entrance sign (Robert Frost Ranch) where the Tank Battery was in Ammons Oil Lease. Lease Owners were locked out.

25.     Diana Blackwell, after being enjoined in Case No. CJ-2018-189 in Okmulgee County sold many Pump Jacks, a T4 Drilling Rig worth $400,000, three Drilling Compressors, 4000 ft of 4.5 inch Drilling pipe, Two Workover Rigs, one Winch Truck, many Trailers, Power Swivel, tubing, Sucker Rods, etc., worth $800,000 as our Crew has been locked out. All the damage done is still unknown in W/2 of SE/4 of section 32, T 14N, Range 14 East of Okmulgee County. See **Exhibit I.**

26.     Billy Winsette bought N/2 of SE/4 section 32, T 14N, R 14 East and plugged wells and removed all Pump Jacks, cut off flow lines, affecting production from 10 wells. When Agrawal tried to enter the Jacobs well (NE SE Section 32, T 14N, R 14 East); he came running to Chase Agrawal out on . See **Exhibit I and J.**

27.     Ott Holleman of Okmulgee is believed to have bought the Pump Jacks from the Morris Leases (Section 32, T 14N, R 14 East) where Agrawal had 23 wells. All this information is traced by the task force of Oklahoma Bureau of Investigation and the Okmulgee County Sheriff Department.

28.     Roy Briggie took more than $100,000 in drilling equipment after locking out James Martin from his shop who was our Pumper, driller, and Workover Rig Operator. Briggie also took out gold and silver worth 1.5 million dollars inherited by James Martin from the locked-out shop.

29.     American Heritage Investment Capital, Rafael Pinedo, Silverton Energy, Inc, bought Agrawal Assets for 3.5 million dollars plus $150,000 and walked away after the wells were shut down by Tyler Trout.

30.     Bill Malloy, and Ada Energy Services, LLC, plugged a Producing well in Hughes County, and Surgeo Ortega and Surge Plug and Abandon, LLC plugged Garner Lillard # 1, C.E. Garner, # 1 and Cindy Mallory # 1-31 in McClain County.

30.     John Does include the Grass Lessee of Diana Blackwell who used drill pipe to build Corral for cattle farming and removed saltwater tanks, and many trailers, etc. A full list will be developed after investigation.

### III. CAUSE OF ACTION AGAINST DEFENDANTS.

31 . First Cause of Action against United States Postal Service and Tyler Trout. Tort Claims are being filed against the U.S. Postal Service, however, that issue is not pled here for damages since the Bond Forfeiture Order was brought by Tyler Trout without Jurisdiction of the Administrative Law Judge, Linda Foreman.

32.    Hence the proper remedy is to declare that the Bond Forfeiture Order, no. . 743779 is  VOID under the existing Law. See Brief in Support to vacate Administrative Order Forfeiting Operating Bond. That is very harsh action that has caused Agrawal loss of over ten million dollars.

33.    On June 12, 2024, USPS Mail Man signed the name of Phill Sells on a Green Card which was to serve a Complaint of Oklahoma Corporation Commission against Oil Field Production, Inc. This resulted in a default Judgment revoking its Operating Bond by Order no. 743779, **Show A1** in Exhibit A. Agrawal's 112 wells have been orphaned in 18 Oklahoma Counties.

34. Kris K. Agrawal is an 82-yr old disabled person living in Oklahoma City. He is the Manager and working interest owner of Silver Red Fork Sand Unit and 112 other wells in State of Oklahoma.

AAPL FORM 610-1982 Model Form Operating Agreement is used to appoint working

interest owners and an Operator. Article III Interest of Parties,

Section A: Oil and Gas Interests:

" If any party owns an oil and gas interest in the Contract Area, that interest shall be

treated for all purposes of this agreement and during the term hereof as if it were

covered by the form of oil and gas lease attached hereto as Exhibit B, and the owners

thereof shall be deemed to own the royalties interest received in such lease and the

interest of the lease thereunder."

35. The Wallaces are the grantors and co-trustees of the Wallace Joint Revocable Trust

(the "Wallace Trust") dated May 25, 2011. The Wallace Trust is an Oklahoma trust

created by the Wallaces and is the owner of the surface estate on which several

Silver Red Fork Sand UNIT wells are found. **Exhibit B**  is a Map of  UNIT wells

in Section 21, and SE/4 of Section 20, T 19 N, 08 East, Creek County.

36. Agrawal bought its mineral interest in the subject property by assignment dated

August 6, 2014, from Whitehead Production Company.

37. Defendant Haygood and his wife ("Jane Doe")  reside on the Unitized Mineral Lands south of Cimmaron River, North of Silver 14-1 in parts of Section 21, T 19 N, R 08 E of Creek County. The assignment is recorded in Book 1589 Page 0878-0883 as of 10/30/2025 to Drill BB USA Fund

38. Defendant Clark Dexter is the son-in law of Barron Haygood. He told Agrawal that he owns 20 acres on the Unitized Mineral Lands in Creek County in Section 21, T 19N, R 08 E, North of Silver 28-1.He has blocked excess to wells, improved and appropriated the road. A gate has been placed that blocked free access to some of the wells. He asked Agrawal not to go in his gate. He Placed a Culvert in which Agrawal Vehicle was stuck for four hours until I flagged a vehicle to get me out while waiting for a wrecker. Each of the Dot in Exhibit B is a Potential Producing well that had access to them. Now this access is gone/denied.

39. Defendant Clark Dexter is also an OIL WELL Inspector for the Oklahoma Corporation Commission (OCC) regulating these wells.

40. Formerly, Clark Dexter Pumped  ORS Unit Wells when he worked for a Rural Water District.

41. Defendant OCC is the employer of Clark Dexter. He could be served thru Oklahoma Corporation Commission.

42. Three Commissioners run Oklahoma Corporation Commission. Service can be made by summons through Chairwoman Kim Davis. Brandy Wreath was terminated on December 30, 2025, and Jim Marshall was appointed as Interim

Director.

43. Effective August 13, 2014, the Oklahoma Corporation Commission approved the transfer of (18) eighteen wells listed on **Exhibit "D"** with valid surety. The 19th well is an injection well. These 19 Unit wells are part of the Silver Red Fork Sand Unit formed upon notice, hearing and approval of the Royalty and Working interest owners in accordance with 52 O.S. ¶287.1 etc. The 800-acre Unit includes Sections 16, 17, 20, 21, and 28 of Township 19 North, Range 08 East in Creek County. The Unit has 31 Tracts. The Tract owners are individual Royalty Owners, living in Oklahoma and all other United States except Alaska and Hawaii.

44. Kris Agrawal hired Oil Field Production, Inc., (OFP) to produce these wells. The transfer of these wells was approved by Oklahoma Corporation Commission on January 24, 2022. See **Exhibit D.**

45. Defendants have interfered with production of Oil and Gas from the OFP wells ever since they were bought, insinuating Oh! the Brown man owns the wells now. This has caused deep-rooted mental anguish.

46. Defendant Jane Doe told her husband, Barron Haygood, "get this Indian man out of here. I do not want to see him ever again." She will not get out of her Car to close the entrance gate and lock it, breaching security.

47. Defendants' interference has prevented OFP from operating and keeping the UNIT wells on surface estate owned by the Wallace Trust, Haygood, Jane Doe and Dexter.

48. Defendants' actions have included (1) stopping Crude Oil Sales, last time running off the Crude Oil Tank Truck on or about July 2, 2025, (2) theft of Pump Jacks, Injection Pumps, Transfer Pumps, (3) threats to shoot and kill representatives of OFP on July 11, 2025, (4) appropriation of pre-existing lease roads used to service the wells, (5) denial of access to ORS-OFP personnel and contractors, (6) damage or conversion of ORS equipment, and (7) the placement of locks on the gates by Wallace and Dexter.

49. OFP  Tank Battery gate must remain closed. It has a Combination Lock and a Lock of Haygood. But his wife will not get out of CAR to open and close the gate. Tank Battery is found inside the gate.

50. A judgment was granted against Defendant Oklahoma Corporation Commission in February 2023, but it refused or did not Pay judgment of $25,000 to Oilfield Production, Inc. The $25,000 was funded by Plaintiff Agrawal from his IRA Money.

51. Defendants have acted intentionally and through wrongful means to prevent OFP from earning revenue from its own wells, even Tom Wallace pledging that wells are not capable of producing oil and that not one cup of oil will ever again be produced from OFP operated Unit Wells found on land owned by the Wallace Trust. Tom Wallce said to Agrawal that "if any oil is produced, I will drink it." When Agrawal brought him the Oil from one of the wells on the Banks of Cimmaron River, well no. 16-4 in a Gallon Jug, Wallce walked away to his house.

52. Tom Wallace will not allow production of oil from Silver 23-1 in front of his house. He appropriated electric Pole, and cut off electric line to this well. He will not grant easement to Indian Electric Coop to install a transformer and Electric Meter.

53. As of July 11, 2025, the threats to shoot and kill were repeated by Wallce and Haygood against anyone who entered the fence gates.

54. Defendant Haygood is using the position of his son-in-law, Clark Dexter to run off owners, operators, contractors, and purchasers to achieve their stated aims to Plug these wells. Haygood stated that he will use OCC and OERB to plug these wells.

55. Defendant Haygood conspired with Tom Wallce on July 11, 2025, to run off a second Purchaser of Silver Red Fork Sand Unit who has an Operating License from OCC. The sale is lost.

56. Defendant Clark Dexter admitted that he ran off the Crude Oil Hauler Tank Truck. That was on or about July 2, 2025. This produced Crude Oil has been sitting in tanks for over a year since July 2024.This was a loss of $10,000, plus the cleanup cost.

57. Defendant Mrs. Haygood said that she did not want to see the brown man passing thru my gate upon my land. She was referring to Kris K. Agrawal.

58. Haygood has threatened and ran off many Purchasers and Contractors since then, two of them in June-July 2025. One purchaser met him on March 17, 2025.

Haygood tried to call his Son-in-Law to threaten him, but he was not available. Agrawal was with him.

59. Haygood was found entering one of the wells on top of the Hill (Silver 28-1) in Section 21, T 19N, R 8E who asked Agrawal, " what are you doing here." The Pump Jack from this well has been stolen since then.

60. Haygood had run-in with Robert Reed who is the President of Oilfield Production Inc since its inception. Luke Oilfield Services was being visited by Haygood while he moved the Pumping Unit on Silver 21-2.

61. Haygood will not allow production of Silver 14-1. He kept disconnecting the Polyline running from Silver 14-1 to Silver 21-2 and kept calling the OCC Inspector. The Electric Generator and the 18 ft two-axle trailer, which were essential for running the submersible pump, were later stolen. He will not allow the Electric Line, and a flow line to be installed under the Oil Lease Road that he appropriated to his house.

62. On July 11, 2025, The Landowners, Tom Wallace, and Barron Haygood threatened the second Purchaser of the Silver Red Fork Sand Unit who is a Bonded Operator by saying that that all equipment and wells are theirs. "Do Not come back or "you will be shot dead" . This sale was lost.

63. On February 10, 2026, the similar threat was repeated to the Driller from Texas.

WHEREFORE, Plaintiff demands Judgment against Defendant in the amount of two million dollars against Clark Dexter, Barron Haygood, Tom Wallace, Everette Plummer and Tyler Trout, attorney fees and costs of this action. .

## SECOND CAUSE OF ACTION
### (Permanent Injunction)

64. The continued actions of Defendants, Tyler Trout, Clark Dexter, David Lansdale,
Everette Plummer, Brent Smith has resulted in irreparable injury to OFP, and
Agrawal unless OFP or successors are allowed to function as a prudent operator
with respect to the OFP wells found on surface property owned by the Wallace
Trust, Haygood, Dexter and Plummer. A myriad of risks are avoided by allowing
the operator of those many wells to perform its duties and obligations as
authorized and required by the regulations of the Oklahoma Corporation
Commission. For example, OFP is being precluded from ensuring that its own
wells do not cause environmental damage to property owners. Photographs show
tallgrass growth and an oil pickup hose that was emptied onto the ground by the
crude oil purchasers truck, which was later removed from the site by Clark Dexter
acting under the authority of OCC. These pictures were taken on July 11, 2025.

65. The harm to Plaintiffs if an injunction is not granted outweighs the harm to the
Defendant if it is granted. OFP has a dominant right to make reasonable use of the
surface to work these wells and is merely seeking to take actions as are allowed
by applicable Oklahoma regulations and statutes. These actions are designed to
protect both the rights of the surface and mineral owners. Therefore, an injunction
against the Defendants will not cause Defendants any harm since they are
compelled to allow OFP to make reasonable use of the surface in running the
subject wells. To the contrary, an injunction will allow the Corporation

Commission approved operator to do its job and thereby protect the interests of the Defendants and the Royalty Owners.

66. Plaintiff has no adequate remedy at law because an inability to produce the wells could violate applicable regulations, risk future production, and threaten environmental damage. The OFP is both required and allowed to operate these wells which will not be possible unless Defendants are enjoined from further interference with Agrawal-OFP' reasonable use of the surface.

67. The interests of the public will not be disserved by granting an injunction because Agrawal OFP merely seeks to make reasonable use of the surface to perform its duties as authorized by the Oklahoma Corporation Commission.

68. A cease-and-desist letter sent to Tom Wallace by an attorney on June 19, 2017. It cost Agrawal $2,000 and several trips to Tulsa.

69. This Petition is supported by the accompanying Affidavit of Mr. Kris Agrawal.

WHEREFORE, Plaintiff demands Judgment against Defendant in the form of an injunction permanently enjoining Defendant from further interference with OFP-Drill BB USA Fund' reasonable use of the surface, by any action, including but not limited to threats against OFP personnel or agents, obstruction of ingress and egress to the OFP wells, and damage and/or conversion of OFP equipment and lease road.

### THIRD CAUSE OF ACTION
### (Intentional Interference with Production)

70. Defendants' actions have prevented Agrawal-OFP from exercising its legal right to make such reasonable use of the surface as is necessary to operate and produce

the subject wells.

71. Agrawal-OFP has suffered damages in excess of Seventy-Five Thousand Dollars ($75,000.00) as a result of Defendant's wrongful actions which interfered with OFP' reasonable use of the surface estate to operate and produce the subject wells.

72. Defendants have acted intentionally and maliciously towards Agrawal-OFP and its legal rights. Accordingly, punitive damages should be entered against the Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00).

73. Defendant Clark Dexter prevented  Sale of Crude Oil, which was a loss of Ten Thousand Dollars ($10,000). He used his OCC Badge to run off the Tank Truck that caused spill of Crude oil from the Suction hose. That will require cleanup costs from Plaintiff.

74. The Wallace and Haygood defendants allegedly threatened the life and liberty of OFP personnel, causing mental anguish, and loss of sleep, who are seeking damages in the amount of ten million dollars ($10,000,000).

75. The defendants stopped the Sale of Oil Field Production wells  for which OFP demand a judgment of Two Million Dollars, ($2,000,000).

WHEREFORE, Plaintiff prays that judgment be entered against each of these Defendants for compensatory damages in an amount in excess of Twelve Million Dollars ($12,000,000), and for punitive damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for pre-judgement and post-judgment interest

thereon, costs and attorney fees incurred herein, together with such other relief as is equitable.

## FOURTH CAUSE OF ACTION

### (Intentional and REPEATED Violation of Due Process Rights of Oilfield Production, Inc. by Tyler Trout and Oklahoma Corporation Commission)

76. Tyler Trout of Oklahoma Corporation Commission, Lied to Administrative Law Judge, Linda Foreman on June 28, 2024, that Oilfield Production Inc. had been served thru Phill Sells, its Registered Agent and forfeited OFP $25,000 Bond. This was in violation of due process rights. United States Letter Carrier signed the name of Phill Sells, citing Cv-19, which is no service upon OFP. Order No. 743779 (**Exhibit A-1**) is Facially and Legally Void. Tyler Trout procured a witness to commit perjury, and damaged OFP for Three Million and Three Hundred Eighty-Five Thousand Dollars ($3,385,000) due to cancellation of sale of wells to a Public Company.

77. Tyler Trout was on notice of Order nos. 724083 AND 725441, which he obtained without due process by lying to the Judge, which were vacated. **It took one year to vacate the Orders during which time wells, including Silver city wells, were shut down causing OFP losses.** Plaintiffs demand judgment against Tyler Trout individually and against his employer, Oklahoma Corporation Commission for four million dollars, ($4,000,000).

WHEREFORE, Plaintiff prays that judgment be entered against Tyler Trout and Oklahoma Corporation Commission for forfeiting /revoking Operating Bond and

15

compensatory damages in an amount in excess of Four Million Dollars,($4,000,000), for punitive damages in an amount in excess of Seventy-Five Thousand Dollars, ($75,000) for pre-judgement and post-judgment interest thereon, costs and attorney fees incurred herein, together with such other relief as is equitable.

## FIFTH CAUSE OF ACTION

### (Refund of $25,000 Judgment from Oklahoma Corporation Commission)

78. On 7th day of February 2023, an Order No. 732011 was entered which stated that: ……." refund to applicant ( Oilfield Production, Inc,) $25,000 surety forfeited under Order No. 725441within twenty (20) days of the issuance of the Final Order". However, Oklahoma Corporation Commission Surety Department or the State Treasurer has not refunded $25,000. See **Exhibit C**. Several times Plaintiffs sent reminders to the OCC Surety Division, but no response was received.

WHEREFORE, Plaintiff, Agrawal prays that an Order and judgment be entered against Oklahoma Corporation Commission for compensatory damages in an amount in excess of Twenty Five Thousand Dollars ($25,000), and award special damages in an amount in excess of Twenty -Five Thousand Dollars ($25,000), for pre-judgement and post-judgment interest thereon, costs and attorney fees incurred herein, together with such other relief as is equitable.

## SIXTH CAUSE OF ACTION

### ( TORT CLAIM Damages caused by Robert Frost, Diana Blackwell, Billy Winsette, Ott Holleman, and John and Jane Does  due to Oklahoma Corporation Commission made the wells Orphan, all as joint Tort Feasors)

79. **Notice of** Tort Claims was filed against Corporation Commission on 30th day
    of May 2025, on Morris Leases in Section 32, T 14N, Range 14 East of
    Okmulgee County, and presumed denied after 90 days. This Tort Claim is filed
    within 180 days of denial, or total of 270 days plus five days in mailing, 265th
    days is the day of filing. This tort claim and inverse condemnation are valid if
    they are filed within the required time frame. Statute of Limitation is 15 Years
    for Inverse Condemnation, like adverse possession, which can be filed any day
    after notice.

80. Agrawal and the Lease Owners claim total damages of Four Million Dollars:
    a) Equipment lost/stolen, T-4 Hydraulic Air Drilling Rig, 4000 ft of Drill Pipe,
    three drilling compressors, b) many Pump Jacks, Tubing Trailers, 23/8 inch
    tubing, Goose Neck Trailer with Power Swivel and two engines, c) Winch Truck
    attached to the Double Pole Workover Rig, a Spudder Rig, d) Tank Battery
    removed in Ammons Lease by Robert Frost, and e) Miscellaneous Pumps on a
    Trailer to commence water flood, f) A $800,000 Mortgage lien was filed which
    became worthless.

81. Since the Minerals cannot be recovered, Plaintiff also claims inverse
    condemnation against Oklahoma Corporation Commission for two million
    dollars.

82. Plaintiff request that Court appoint three Appraisers from Okmulgee County to
    appraise the lost value of Minerals and enter award as determined by the
    Appraisers.

    WHEREFORE, Plaintiff, Agrawal prays that an Order and judgment be entered
    against **Robert Frost, Diana Blackwell, Billy Winsette, Ott Holleman,
    Oklahoma Corporation Commission as the joint Tort feasors** and for
    compensatory damages in an amount in excess of Seventy Five Thousand Dollars
    ($75,000), for pre-judgement and post-judgment interest thereon, costs and attorney

fees incurred herein, together with such other relief as is equitable.

## SEVENTH CAUSE OF ACTION

(Against Roy Brigge individually and as Trustee of Roy Brigge Revocable Trust and James Martin of Okmulgee, Oklahoma)

83. Agrawal had many thousand dollars of tools, gas compressors, drilling Hammers, Drill Bits, and well workover tools, chains, Boomers, hammers, wrenches with James Martin. He kept it in his garage. Roy Brigge took them and sold them or stored them somewhere else after removing Martin from his 8000 sq ft garage.

84. Plaintiff requests judgment against Roy Brigge individually and as Trustee of Roy Brigge Revocable Trust and James Martin as joint Tort Feasors. James Martin can provide photographs of contents of his garage.

WHEREFORE, Plaintiff, Agrawal prays that an Order and judgment be entered against

**Robert Frost, Diana Blackwell, Billy Winsette, Ott Holleman, Oklahoma Corporation Commission as the joint Tort feasors** and for compensatory damages in an amount in excess of Seventy Five Thousand Dollars ($75,000), for pre-judgement and post-judgment interest thereon, costs and attorney fees incurred herein, together with such other relief as is equitable.

## EIGHTH CAUSE OF ACTION

( Against Oklahoma Corporation Commission in Inverse Condemnation and against Biil Malloy of Ada Energy Services, LLC for Plugging Skinner Davis No. 5 well located in the NE, NE, NE quarter of Section 12, Township 06 North, and Range 09 East of Hughes County, API 3506322534)

85. Tort Claim was filed against Oklahoma Corporation Commission, on October 30, 2025. Ninety (90) days have expired. The Claim is deemed denied. Hence Tort Claim and Inverse condemnation claims are proper.

a) Inverse Condemnation Claim can be merged with Governmental Tort Claims, 51 O.S. 2011 § 157, etc.,

b) Inverse condemnation is governed by Title 27, Eminent domain, §27-12 (2018)

A. Defendants had duty to act in a way that did not cause injury to Plaintiffs.

B. Defendants committed a breach of that duty, will not allow the property to be transferred to produce.

### STATEMENT OF THE TORT CLAIM STATUTE APPLICABLE TO THIS CASE

86. A person may not initiate a suit against the state or a political subdivision unless the claim has been denied in whole or in part. A claim is deemed denied if the state or political subdivision fails to approve the claim in its entirety within ninety (90) days, unless the state or political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period. If the state or a political subdivision approves or denies the claim in ninety (90) days or less, the state or political subdivision shall give notice within five (5) days of such action to the claimant at the address listed in the claim. If the state or political subdivision fails to give the notice required by this subsection, the period for commencement of an action in subsection B of this section shall not begin until the expiration of the ninety-day period for approval. The claimant and the state or political subdivision may continue attempts to settle a claim; however, settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision.

87. B. No action for any cause arising under this act, Section 151 et seq. of this title, shall be maintained unless valid notice has been given and the action commences within one hundred eighty (180) days after denial of the claim as set forth in this section. The claimant and the state or political subdivision may agree in writing to extend the time to commence an action for the purpose of continuing to attempt settlement of the claim except no such extension shall be for longer than two (2) years from the date of the loss.

### 88. Rights of Lease Holders such as Oil and Gas Lessee

¶10 A leasehold interest may be subject to a taking, and the leaseholder may have a cause of action in **inverse condemnation**. See *Grand River Dam Authority v. Brogna*, 1991 OK CIV APP 104 , 827 P.2d 901 (leasehold interest in oil and gas is in nature of property right such that leaseholder had right to intervene in condemnation proceeding); *State ex rel. Cartwright v. Dunbar*, 1980 OK 15 , 618 P.2d 900 ; 26 Am.Jur. 2d *Eminent Domain*, §177 ("valid contracts are property which is protected . .

. by the Fourteenth Amendment against the taking by a state, unless just compensation is made to the owner."). Further, business losses are admissible to prove the diminution in fair market value of the property taken. *State ex rel. Department of Highways v. Robb*, 454 P.2d 313 (Okla.1969). We therefore find that Whistlestop had standing and stated a claim for relief in its petition.

89. In the notice of Tort Claim Agrawal claimed $800,000 in Tort damages against Corporation Commission for plugging the Skinner Davis # 5 well. This amount was not contested.

90. Additional damages lie when the three appointed Appraisers decide the value of minerals lost that cannot be recovered.

91. Bill Mallow while plugging the well knew that oil was oozing out from Sucker Rod Pump, sucker rods were soaked with oil, Tubing was full of oil, and casing was full of oil. He took the electric Motors, pump Jacks, tubing, rods, sucker rod pump, gas engine, electrical wire, a Hoist worth $1260, and casing all of that worth $200,000 which is the replacement cost. Mr. Mallow knows what it costs to drill and complete the oil wells. He manages oil wells located in Ada, Oklahoma. He also drills oil wells.

92. The owner of the oil lease could easily be found from Hughes County Record by a Phone Call. The Owner should have been informed.

93. He told Agrawal that he did not understand why such a good well was ordered plugged. This well made 5 barrels a day. He had seen worse wells that have not been plugged.

94. Court should appoint three appraisers from Hughes County, who will appraise the value of minerals lost that cannot be recovered, and additional judgment be entered as appraised.

WHEREFORE, Plaintiff, Agrawal prays that an Order and judgment be entered against

**Bill Malloy, Oklahoma Corporation Commission as the joint Tort feasors** for

$800,000 and for compensatory damages in an amount in excess of Seventy Five

Thousand Dollars ($75,000), for pre-judgement and post-judgment interest thereon,

costs and attorney fees incurred herein, together with such other relief as is equitable.

## NINTH CAUSE OF ACTION
**(** Against Oklahoma Corporation Commission in Inverse Condemnation and Tort against Sergio Ortega of Surge Plug and Abandon, LLC, for plugging Cindy Mallory, C.E. Garner, and Garner Lillard)

a) Inverse Condemnation Claim can be merged with Governmental Tort Claims, 51 O.S. 2011 § 157, etc.,
b) Inverse condemnation is governed by Title 27, Eminent domain, §27-12 (2018)
c) Defendants had duty to act in a way that did not cause injury to Plaintiffs.
d) Defendants committed a breach of that duty, will not allow the property to be transferred to produce.
e) All three wells are part of East Gibson Sand Unit which is assigned to Good Gas, LLC by the U.S. Bankruptcy Court.
f) Cost of drilling these wells will be three million dollars.
g) Loss of Minerals are to be determined by the three Appraisers appointed from McClain County.

### Rights of Lease Holders such as Oil and Gas Lessee

¶10 A leasehold interest may be subject to a taking, and the leaseholder may have a cause of action in **inverse condemnation**. See *Grand River Dam Authority v. Brogna*, 1991 OK CIV APP 104 , 827 P.2d 901 (leasehold interest in oil and gas is in nature of property right such that leaseholder had right to intervene in condemnation proceeding); *State ex rel. Cartwright v. Dunbar*, 1980 OK 15 , 618 P.2d 900 ; 26 Am.Jur. 2d *Eminent Domain*, §177 ("valid contracts are property which is protected . . . by the Fourteenth Amendment against the taking by a state, unless just compensation is made to the owner."). Further, business losses are admissible to prove the diminution in fair market value of the property taken. *State ex rel. Department of Highways v. Robb*, 454 P.2d 313 (Okla.1969). We therefore find that Whistlestop had standing and stated a claim for relief in its petition.

95. Additional damages lie when the three appointed Appraisers decide the value of minerals lost that cannot be recovered.

96. Court should appoint three appraisers from McClain County, who will appraise the value of minerals lost that cannot be recovered, and additional judgment be entered as appraised.

96. Court should appoint three appraisers from McClain County, who will appraise the value of minerals lost that cannot be recovered, and additional judgment be entered as appraised.

WHEREFORE, Plaintiff, Agrawal prays that an Order and judgment be entered against Sergio Ortega of Surge Plug and Abandon, LLC **for plugging the three wells, and loss of pump jacks, tubing, rods, Pumps, Casing etc.** in the amount of for $750,000 and for compensatory damages in an amount in excess of Seventy-Five Thousand Dollars ($75,000), for pre-judgement and post-judgment interest thereon, costs and attorney fees incurred herein, together with such other relief as is equitable. Court render judgment against Oklahoma Corporation Commission as determined by three Appraisers.

## TENTH CAUSE OF ACTION

( Judgment against Tyler Trout, Oklahoma Corporation Commission, Raphael Pinedo, American Heritage Investment Capital, L.P. and Silverton Energy, Inc. for three and half million dollars and $150,000 unpaid to Agrawal)

**97.** An ACQUISITION AGREEMENT was entered on April 4, 2024, to purchase wells and equipment from the Plaintiff in the amount of three and half million dollars ($3.500,000,000) in Oklahoma City. Within 13 months of entering into the contract the purchase price was to be paid. **Exhibit K.**

98. The purchase price was not paid, nor the non-refundable price of $150,000 paid. Purchasers performed the study to appraise the 112 wells in Oklahoma for Fifty Million Dollars. Raphael Pinedo visited wells in Garvin and McClain County and obtained a contract to drill additional wells for fifteen million dollars.

99. The purchasers asserted that because the Oklahoma Corporation Commission had forfeited Oil Field Production, Inc.'s operating bond, the wells lost all value

22

against Tyler Trout, Oklahoma Corporation Commission, Raphael Pinedo, American Heritage Investment Capital, L.P. and Silverton Energy, Inc in the amount of for $3,650,000 and for compensatory damages in an amount in excess of Seventy Five Thousand Dollars ($75,000), for pre-judgement and post-judgment interest thereon, costs and attorney fees incurred herein, together with such other relief as is equitable.

Respectfully submitted,

Kris K. Agrawal
4133 North Lincoln Blvd
Oklahoma City, Oklahoma, 73105,
[405-326-0888]

23

## AFFIDAVIT OF KRIS K. AGRAWAL

I Kris K. Agrawal states upon my oath as follows:

I have been a Professional Engineer registered in Oklahoma since 1976.

My Company, Nationwide Engineering and Testing, Inc., has worked for Oil Field Production, Inc. since its inception. Robert Reed was the President of Oil Field Production, Inc.

After remediating the oil spills caused due to shut-down by Oklahoma Corporation Commission in 2022 to 2023, I was advised that David Lansdale wanted to perform some work on wells located on Everette Plummer residence. These wells are Barney Sanders, Martha, and Bromide visible from Mr. Plummer residence.

I hired one more worker from Garvin County to talk to David Lansdale as Mr. Lansdale will not talk to me. He took notes on his cell phone which he sent me on my phone. Three more workers were hired, for a total of five.

I authorized that work to be performed immediately until it was finished.

There was no pollution, fire hazard, grass was cut off and there was no debris, surface trash, and well signs were posted and readable.

Workers also installed a 500-barrel tank to store Crude oil from Barney Sanders. They also enlarged the Tank Dyke. I made several trips to examine work being performed.

Affiant

Kris K. Agrawal, Affiant

> KIM E. KIRBY
> Notary Public - State of Oklahoma
> Commission Number 06009087
> My Commission Expires Sep 15, 2026

State of Oklahoma, County of Oklahoma, SS

Subscribed and sworn to before me by Kris K. Agrawal known to me on February 17, 2026.

Notary Public: _Kim E Kirby_  My Commission Expires 09/15/2026

BRIEFS
IN
SUPPORT

. The Court of Linda Freeman never acquired jurisdiction upon the
Respondent, Oil Field Production, Inc. The Order no. 743779 is
VOID. Exhibit A1

## BRIEF IN SUPPORT TO VACATE ORDER NO. 743779.

¶1 The Oklahoma State Constitution, echoing the United States Constitution,
provides that "[n]o person shall be deprived of life, liberty, or property, without
due process of law." Although, as the majority notes, the "definitional sweep" of
this clause is coextensive with its federal counterpart, this Court's decisions with
regard to state constitutional questions are based on Oklahoma law. *In Re
Adoption of K.P.M.A.*, 2014 OK 85, ¶ 17, n.3, 341 P.3d 38, 44.

¶2 The United States Supreme Court has held that, to comport with the Due
Process Clause, States must provide "**notice** reasonably calculated, under all the
circumstances, to apprise interested parties of the pendency of the
action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314
(1950). The Court in *Dusenbery v. United States*, 534 U.S. 161, 170 (2002),
expressly noted, however, that "heroic efforts" are not required. To the contrary,
the Supreme Court has rejected "[a] construction of the Due Process Clause
which would place impossible or impractical obstacles in the way [of the
State]." *Mullane*, 339 U.S. at 313-14. In determining whether an individual has
been afforded due process, therefore, courts must balance the State's interest in
efficiently managing its administrative system and an individual's interest in
adequate **notice**. See *id.* at 314.

¶3. THE DISTRICT COURT MAY WITH HOLD LEGAL RECOGNITION
FROM A COMMISSION ORDER THAT IS FACIALLY INVALID, cited in
**Harry R. Carlile Trust v. Cotton Petroleum Corp., 1986 OK 16, 732 P.2d
438, 57 OBJ 998**

¶6 By its collateral attack Carlile attempted to avoid the legal effect of the
1974 spacing order. A collateral attack may not be launched on a Commission
order that is facially invulnerable.[7] The district court's power to inquire into
the validity of Commission orders is legally limited to ascertaining, from an
inspection of the face of the proceedings,[8] if the Commission had jurisdiction
to issue the order.[9] A Commission order is deemed facially invalid only when

the face of the record reveals the absence of at least one of these three requisite
elements of agency jurisdiction - i.e., (1) jurisdiction over the parties, (2)
jurisdiction over the subject matter, or (3) jurisdictional power to issue the
specific order in question.[10]

¶14 The above quoted language indicates that a final order of the Commission
may be examined in a subsequent proceeding to determine if the Commission
was possessed of the necessary jurisdiction to issue the prior order. This
determination, however, is limited to an examination of the record in the prior
proceeding. Mullins v. Ward, 712 P.2d 55, 59 n. 7 (Okl. 1985); Harry R. Carlile
Trust v. Cotton Petroleum, 732 P.2d 438, 441 (Okl. 1986). In Mullins v. Ward,
supra, we said:

"A collateral attack on an order of the Commission which is not facially void is
impermissible. Art. 9 § 20, Okl.Const. and 52 O.S. 1981 § 111 . The district
court's inquiry into the validity of Commission orders stands confined to
determining, from an inspection of the face of the proceedings [i.e., the
application, the process by which the parties were notified and the
Commission's order], if the Commission had jurisdiction to issue the order.
McDaniel v. Moyer, Okl., 662 P.2d 309, 312 [1983]; Chancellor v. Tenneco Oil
Co., Okl., 653 P.2d 204, 206 [1982]; Gulfstream Petroleum Corp. v. Layden,
Okl., 632 P.2d 376, 379 [1981]; Woods Petroleum Corp. v. Sledge, Okl., 632
P.2d 393, 396 [1981]; and State v. Corporation Commission, Okl., 590 P.2d
674, 677 [1979]. A Commission order is deemed void when the face of the
record reveals that at least one of the three elements of agency jurisdiction was
absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or
jurisdictional power to pronounce the particular decision that was rendered.
Gulfstream Petroleum Corp. v. Layden, supra at 379." Id. 712 P.2d at 59 n. 7.

A void judgment which includes judgment entered by a court which lacks
jurisdiction over the parties or the subject matter, or lacks inherent power to
enter the particular judgment, or an order procured by **fraud,** can be attacked at
any time, in any court, either directly or collaterally, provided that the party is
properly before the court, *Long v. Shorebank Development Corp.*, 182 F.3d 548
( C.A. 7 Ill. 1999).

A void judgment is one that has been procured by extrinsic or collateral **fraud** or entered by court that did to have jurisdiction over subject matter or the parties, *Rook v. Rook*, 353 S.E. 2d 756, (Va. 1987).

A void judgment or order is one that is entered by a court lacking jurisdiction over the parties or the subject matter, or lacking the inherent power to enter the order or judgment, or where the order was procured by **fraud**, In *re Adoption of E.L.*, 733 N.E.2d 846, (Ill.App. 1 Dist. 2000).

Void judgments generally fall into two classifications, that is, judgments where there is want of jurisdiction of person or subject matter, and judgments procured through **fraud,** and such judgments may be attacked directly or collaterally, *Irving v. Rodriquez*, 169 N.E.2d 145, (Ilapak. 2 Dist. 1960).

> Void order which is one entered by court which lacks jurisdiction over parties or subject matter, or lacks inherent power to enter judgment, or order procured by **fraud,** can be attacked at any time, in any court, either directly or collaterally, provided that party is properly before court, *People ex rel. Brzica v. Village of Lake Barrington*, 644 N.E.2d 66 (Ill.App. 2 Dist. 1994).

## LACK OF DUE PROCESS:

Void judgment is one where court lacked personal or subject matter jurisdiction or entry of order violated due process, U.S.C.A. Const. Amend. 5 - Triad Energy Corp. v. McNell 110 F.R.D. 382 (S.D.N.Y. 1986).

Judgment is a void judgment if court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or acted in a manner inconsistent with due process, Fed. Rules Civ. Proc., Rule 60(b)(4), 28 U.S.C.A., U.S.C.A. Const. Amend. 5 - *Klugh v. U.S.*, 620 F.Supp. 892 (D.S.C. 1985).

Void judgment may be defined as one in which rendering court lacked subject matter jurisdiction, lacked personal jurisdiction or acted in manner inconsistent with due process of law *Eckel v. MacNeal*, 628 N.E. 2d 741 (Ill. App. Dist. 1993).

Void judgment under federal law is one in which rendering court lacked subject matter jurisdiction over dispute or jurisdiction over parties, or acted in manner inconsistent with due process of law or otherwise acted unconstitutionally in entering judgment, U.S.C.A. Const. Amed. 5, *Hays v. Louisiana Dock Co.*, 452 n.e.2D 1383 (Ill. App. 5 Dist. 1983).

Void judgment is one rendered by court which lacked personal or subject matter jurisdiction or acted in manner inconsistent with due process, U.S.C.A. Const. Amends. 5, 14 *Matter of Marriage of Hampshire*, 869 P.2d 58 ( Kan. 1997).

> A void judgment is one rendered by a court which lacked personal or subject matter jurisdiction or acted in a manner inconsistent with due process. In *re Estate of Wells*, 983 P.2d 279, (Kan. App. 1999).

> Judgments entered where court lacked either subject matter or personal jurisdiction, or that were otherwise entered in violation of due process of law, must be set aside, *Jaffe and Asher v. Van Brunt*, S.D.N.Y.1994. 158 F.R.D. 278.

> JURISDICTION:

> Void judgments are those rendered by a court which lacked jurisdiction, either of the subject matter or the parties, *Wahl v. Round Valley Bank* 38 Ariz. 411, 300 P. 955 (1931); Tube City Mining & Milling Co. v. Otterson, 16 Ariz. 305, 146 P. 203 (1914); and Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 2d 278 (1940).

A judgment shown by evidence to be invalid for want of jurisdiction is a void judgment or at all events has all attributes of a void judgment, *City of Los Angeles v. Morgan*, 234 P.2d 319 (Cal.App. 2 Dist. 1951).

Void judgment, which is subject to collateral attack, is simulated judgment devoid of any potency because of jurisdictional defects, *Ward v. Terriere*, 386 P.2d 352 (Colo. 1963).

> A void judgment is a simulated judgment devoid of any potency because of jurisdictional defects only, in the court rendering it and defect of jurisdiction

may relate to a party or parties, the subject matter, the cause of action, the question to be determined, or relief to be granted, *Davidson Chevrolet, Inc. v. City and County of Denver*, 330 P.2d 1116, certiorari denied 79 S.Ct. 609, 359 U.S. 926, 3 L.Ed. 2d 629 (Colo. 1958).

Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved and such a judgment may be attacked at any time, either directly or collaterally, *People v. Wade*, 506 N.W.2d 954 (Ill. 1987).

Void judgment is one entered by court without jurisdiction of parties or subject matter or that lacks inherent power to make or enter particular order involved; such judgment **may be attacked at any time, either directly or collaterally *People v. Sales*, 551 N.E.2d 1359 (Ill.App. 2 Dist. 1990**).

Relief from void judgment is available when trial court lacked either personal or subject matter jurisdiction, Dusenberry v. Dusenberry, 625 N.E. 2d 458 (Ind.App. 1 Dist. 1993).

Judgment is void if court that rendered it lacked personal or subject matter jurisdiction; void judgment is nullity and may be vacated at any time, *Matter of Marriage of Welliver*, 869 P.2d 653 (Kan. 1994).

Void judgment is one rendered in absence of jurisdiction over subject matter or parties, 310 N.W. 2d 502, (Minn. 1981).

A void judgment is one rendered in absence of jurisdiction over subject matter or parties, *Lange v. Johnson*, 204 N.W.2d 205 (Minn. 1973).

A void judgment is one which has merely semblance, without some essential element, as when court purporting to render is has no jurisdiction, *Mills v. Richardson*, 81 S.E. 2d 409, (N.C. 1954).

Void judgment is one entered by court without jurisdiction to enter such judgment, *State v. Blankenship*, 675 N.E. 2d 1303, (Ohio App. 9 Dist. 1996).

A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment, *State v. Richie*, 20 S.W.3d 624 (Tenn. 2000).

Void judgment is one which shows upon face of record want of jurisdiction in court assuming to render judgment, and want of jurisdiction may be either of person, subject matter generally, particular question to be decided or relief assumed to be given, *State ex rel. Dawson v. Bomar*, 354 S.W. 2d 763, certiorari denied, (Tenn. 1962).

A void judgment is one which shows upon face of record a want of jurisdiction in court assuming to render the judgment, *Underwood v. Brown*, 244 S.W. 2d 168 (Tenn. 1951).

A void judgment is one which shows on face of record the want of jurisdiction in court assuming to render judgment, which want of jurisdiction may be either of the person, or of the subject matter generally, or of the particular question attempted to decided or relief assumed to be given, *Richardson v. Mitchell*, 237 S.W. 2d 577, (Tenn.Ct. App. 1950).

A void judgment is a judgment, decree, or order entered by a court which lacks jurisdiction of the parties or of the subject matter, or which lacks the inherent power to make or enter the particular order involved, *State ex rel. Turner v. Briggs*, 971 P.2d 581 (Wash. App. Div. 1999).

Void judgments are those rendered by court which lacked jurisdiction, either of subject matter or parties, *Cockerham v. Zikratch*, 619 P.2d 739 (Ariz. 1980).

Invalidity needs to appear on face of judgment alone that judgment or order may be said to be intrinsically void or void on its face, if lack of jurisdiction appears from the record, *Crockett Oil Co. v. Effie*, 374 S.W.2d 154 ( Mo.App. 1964).

Decision is void on the face of the judgment roll when from four corners of that roll, it may be determined that at least one of three elements of jurisdiction was absent: (1) jurisdiction over parties, (2) jurisdiction over subject matter, or (3) jurisdictional power to pronounce particular judgment that was rendered, *B & C*

*Investments, Inc. v. F & M Nat. Bank & Trust*, 903 P.2d 339 (Okla. App. Div. 3, 1995).

"It is a fundamental precept that federal courts are courts of limited jurisdiction, constrained to exercise only authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In *re Bulldog Trucking,* 147 F.3d 347, 352 (4th Cir.1998) (citations omitted). A federal court cannot assume jurisdiction exists. Rather, the plaintiff is required to specifically plead adequate facts in its complaint to sufficiently establish the court has jurisdiction. *Norton v. Larney,* 266 U.S. 511, 515-16 (1925). A defendant may move for dismissal when a complaint contains a jurisdictional defect. Fed.R.Civ.P. 12(b)(1).

A void judgment is one which, from its inception, was a complete nullity and without legal effect, *Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 14 A.L.R. Fed. 298 (C.A. 1 Mass. 1972).

A void judgment is one which from the beginning was complete nullity and without any legal effect, *Hobbs v. U.S. Office of Personnel Management*, 485 F.Supp. 456 (M.D. Fla. 1980).

> Void judgment is one that, from its inception, is complete nullity and without legal effect, *Holstein v. City of Chicago*, 803 SUPP. 205, reconsideration denied 149 F.R.D. 147, affirmed 29 F.3d 1145 (N.D. Ill 1992).

A void judgment is one which, from its inception, was, was a complete nullity and without legal effect, *Rubin v. Johns*, 109 F.R.D. 174 (D. Virgin Islands 1985).

A void judgment is one which, from its inception, is and forever continues to be absolutely null, without legal efficacy, ineffectual to bind the parties or to support a right, of no legal force and effect whatever, and incapable of enforcement in any manner or to any degree - *Loyd v. Director, Dept. of Public Safety*, 480 So. 2d 577 (Ala. Civ. App. 1985).

Res judicata consequences will not be applied to a void judgment which is one which, from its inception, is a complete nullity and without legal effect, *Allcock v. Allcock*, 437 N.E. 2d 392 (Ill. App. 3 Dist. 1982).

Void judgme nt is one which, from its inception, is complete nullity and without legal effect In re Marriage of Parks, 630 N.E. 2d 509 (Ill.App. 5 Dist. 1994). Void judgment is one entered by court that lacks the inherent power to make or enter the particular order involved, and it may be attacked at any time, either directly or collaterally; such a judgment would be a nullity. *People v. Rolland*, 581 N.E.2d 907, (Ill.App. 4 Dist. 1991).

A void judgment has no effect whatsoever and is incapable of confirmation or ratification, Lucas v. Estate of Stavos, 609 N. E. 2d 1114, rehearing denied, and transfer denied (Ind. App. 1 dist. 1993). Void judgment is one that from its inception is a complete nullity and without legal effect *Stidham V. Whelchel*, 698 N.E.2d 1152 (Ind. 1998).

> A void judgment is one which has a mere semblance but is lacking in some of the essential elements which would authorize the court to proceed to judgment, *Henderson v. Henderson*, 59 S.E. 2d 227, (N.C. 1950).

Void judgment, such as may be vacated at any time is one whose invalidity appears on face of judgment roll, *Graff v. Kelly*, 814 P.2d 489 (Okl. 1991).

A void judgment is one that is void on face of judgment roll, *Capital Federal Savings Bank v. Bewley*, 795 P.2d 1051 (Okl. 1990).

Where condition of bail bond was that defendant would appear at present term of court, judgment forfeiting bond for defendant's bail to appear at subsequent term was an old judgment within rule that laches does not run against a void judgment, *Com. V. Miller*, 150 A.2d 585 (Pa. Super. 1959).

Void judgment is one which has no legal force or effect whatever, it is an absolute nullity, its invalidity may be asserted by any person whose rights are affected at any time and at any place and it need not be attacked directly but

may be attacked collaterally whenever and wherever it is interposed, *City of
Lufkin v. McVicker*, 510 S.W. 2d 141 (Tex. Civ. App. - Beaumont 1973).

A void judgment, insofar as it purports to be pronouncement of court, is an
absolute nullity, *Thompson v. Thompson*, 238 S.W.2d 218 (Tex.Civ.App. -
Waco 1951).

Void order may be attacked, either directly or collaterally, at any time, In *re
Estate of Steinfield*, 630 N.E.2d 801, certiorari denied, See also *Steinfeld v.
Hoddick*, 513 U.S. 809, (Ill. 1994).

While voidable orders are readily appealable and must be attacked directly, void
order may be circumvented by collateral attack or remedied by mandamus,
*Sanchez v. Hester*, 911 S.W.2d 173, (Tex.App. - Corpus Christi 1995).

Arizona courts give great weight to federal courts' interpretations of Federal
Rule of Civil Procedure governing motion for relief from judgment in
interpreting identical text of Arizona Rule of Civil Procedure, Estate of Page v.
Litzenburg, 852 P.2d 128, review denied (Ariz.App. Div. 1, 1998).

When rule providing for relief from void judgments is applicable, relief is not
discretionary matter, but is mandatory, *Orner v. Shalala*, 30 F.3d 1307, (Colo.
1994).

> A "void judgment" as we all know, grounds no rights, forms no defense to
> actions taken there under, and is vulnerable to any manner of collateral
> attack (thus here, by ). No statute of limitations or repose runs on its
> holdings, the matters thought to be settled thereby are not res judicata, and
> years later, when the memories may have grown dim and rights long been
> regarded as vested, any disgruntled litigant may reopen the old wound and
> once more probe its depths. And it is then as though trial and adjudication
> had never been. 10/13/58 *FRITTS v. KRUGH. SUPREME COURT OF
> MICHIGAN*, 92 N.W.2d 604, 354 Mich. 97. On certiorari this Court may
> not review questions of fact. *Brown v. Blanchard*, 39 Mich 790. It is not
> at liberty to determine disputed facts (Hyde v. Nelson, 11 Mich 353), nor
> to review the weight of the evidence. *Linn v. Roberts*, 15 Mich 443; *Lynch*

> *v. People*, 16 Mich 472. Certiorari is an appropriate remedy to get rid of a void judgment, one which there is no evidence to sustain. *Lake Shore & Michigan Southern Railway Co. v. Hunt*, 39 Mich 469.

¶9 ... A **void judgment** has long been described as a "dead limb upon the judicial tree, which may be lopped off at any time." *Pettis v. Johnston*, 1920 OK 224, ¶ 0, 190 P. 681, 682 (Syllabus by the Court, No. 10). *Mullins, supra* **note 20, at ¶ 7 n.7, at 60-61 n.7; McDaniel v. Moyer, 1983 OK 39, ¶ 12, 662 P.2d 309, 312;** *Gulfstream, supra* **note 20, at ¶ 12, at 379; Woods Petroleum Corp. v. Sledge, 1981 OK 89, ¶ 7, 632 P.2d 393 , 396; State v. Corporation Comm'n, 1979 OK 16, 11, 590 P.2d 674, 677; Harry R. Carlile Trust v. Cotton Petroleum, 1986 OK 16, ¶ 6 n.8, 732 P.2d 438, 441 n.8.**

**NICHOLSON v. STITT, 2022 OK 35, 508 P.3d 442,  Number: 119270, Decided: 04/19/2022, Sup ct of Okla.**

**Title 75. Statutes and Reports,  Chapter 8 - Administrative Procedures Act**

**Section 309 - Individual Proceedings - Notice - Hearing**

Cite as: 75 O.S. § 309 (OSCN 2026)

> A. In an individual proceeding, all parties shall be afforded an opportunity for hearing after reasonable notice.
>
> B. The notice shall include:
>
> 1. A statement of the time, place and nature of the hearing;
>
> 2. A statement of the legal authority and jurisdiction under which the hearing is to be held;
>
> 3. A reference to the particular sections of the statutes and rules involved; and
>
> 4. A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter upon application a more definite and detailed statement shall be furnished.
>
> C. Opportunity shall be afforded all parties to respond and present evidence and argument on all issues involved.
>
> D. Deliberations by administrative heads, hearing examiners, and other persons authorized by law may be held in executive session pursuant to paragraph 8 of subsection B of Section 307 of Title 25 of the Oklahoma Statutes.
>
> E. Unless precluded by law, informal disposition may be made of any individual proceeding by stipulation, agreed settlement, consent order, or default.
>
> F. The record in an individual proceeding shall include:
>
> 1. All pleadings, motions and intermediate rulings;

2. Evidence received or considered at the individual proceeding;

3. A statement of matters officially noticed;

4. Questions and offers of proof, objections, and rulings thereon;

5. Proposed findings and exceptions;

6. Any decision, opinion, or report by the officer presiding at the hearing; and

7. All other evidence or data submitted to the hearing examiner or administrative head in connection with their consideration of the case provided all parties have had access to such evidence.

G. Oral proceedings shall be electronically recorded. Such recordings shall be maintained for such time so as to protect the record through judicial review. Copies of the recordings shall be provided by the agency at the request of any party to the proceeding. Costs of transcription of the recordings shall be borne by the party requesting the transcription. For judicial review, electronic recordings of an individual proceeding, as certified by the agency, may be submitted to the reviewing court by the agency as part of the record of the proceedings under review without transcription unless otherwise required to be transcribed by the reviewing court. In such case, the expense of transcriptions shall be taxed and assessed against the nonprevailing party. Parties to any proceeding may have the proceedings transcribed by a court reporter at their own expense.

H. Findings of fact shall be based exclusively on the evidence received and on matters officially noticed in the individual proceeding unless otherwise agreed upon by the parties on the record.

"Whenever notice is required to be given by the Commission or the Stewards, such notice shall be given in writing by personal delivery to the person to be notified; or by mailing, certified mail, return receipt requested, such notice to the last known address furnished to the Commission; or may be given as is provided for service of process in a civil proceeding in the State of Oklahoma and pursuant to the provision of the Administrative Procedures Act, 75 O.S. § 309."

*Arrowhead Energy v. Baron Exploration Co.*, 1996 OK 120, 930 P.2d 181:

> The Corporation Commission is a tribunal of limited jurisdiction. *Burmah Oil & Gas Co. v. Corporation Commission,* 541 P.2d 834 (Okla. 1975). Respective rights and obligations of parties are to be determined by the district court. <u>*Southern Union Production Co. v. Corporation Commission,* 465 P.2d 454 (Okla. 1970)</u>. The case at bar is a drainage case, involving private rights, and does not require any determination to be made by the Corporation Commission under its authority to protect correlative rights.

*Atlantic Richfield Co. v. Tomlinson, 1993 OK 106, 859 P.2d 1088:*

> Article 7, § 7 of Oklahoma's Constitution provides that "the District Court shall have unlimited original jurisdiction of all justiciable matters, except as otherwise provided in this Article, and such powers of review of administrative action as may be provided by statute." Title <u>52, O.S.Supp. 1988, § 87.1</u>, defines the Commission's authority relative to a common source of supply and well spacing and drilling units. However, we have construed this statute to vest jurisdiction of public right disputes in the Commission, whereas, disputes over private rights are properly brought in the district court. In other words, the Commission's jurisdiction is limited to protection of public rights in development and production of oil and gas.

*Leck v. Continental Oil Co*., 1989 OK 173, 800 P.2d 224, 226; see also, *Leede Oil & Gas v. Corporation Commission*, Okl., 747 P.2d 294 (1987); *Samson Resources Co. v. Corporation Commission and TXO Production Corp*., Okl., 742 P.2d 1114 (1987); *Nilsen v. Ports of Call Oil Co.*, Okl., 711 P.2d 98 (1985); *MM Resources, Inc. v. Huston*, Okl., 710 P.2d 763 (1985); *Samson Resources Co. v. Corporation Commission*, Okl., 702 P.2d 19 (1985); and *Tenneco Oil Co. v. El Paso Natural Gas Co.*, Okl., 687 P.2d 1049 (1984).

*Leede Oil & Gas, Inc. V. Corporation Comm'n Of Oklahoma*, 1987 OK 117, 747 P.2d 294:
The Commission's jurisdiction is limited to public rights "regarding the conservation of oil and gas." The Commission does not have jurisdiction over private rights.

*Turley v. Flag-Redfern Oil Co.,* 1989 OK 144, 782 P.2d 130:

> We find that: 1) surface owners do not have standing as "persons aggrieved" within the meaning of 52 O.S. 1981 § 113 to appeal Corporation Commission orders; 2) because surface owners hold no interest which entitles them to protest applications to establish, reestablish, or reform drilling and spacing units …

*Mullins v. Ward,* 1985 OK 109, 712 P.2d 55:

> The district court's inquiry into the validity of Commission orders stands confined to determining, from an inspection of the face of the proceedings [i.e., the application, the process by which the parties were notified and the Commission's order], if the Commission had jurisdiction to issue the order. *McDaniel v. Moyer*, Okl., 662 P.2d 309, 312 [1983]; *Chancellor v. Tenneco Oil Company,* Okl., 653 P.2d 204, 206 [1982]; *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 379 [1981]; *Woods Petroleum Corp. v. Sledge,* Okl., 632 P.2d 393, 396 [1981] and *State v. Corporation Commission,* Okl., 590 P.2d 674, 677 [1979]. A Commission order is deemed void when the face of the record reveals that at least one of the three elements of agency jurisdiction was absent, i.e., jurisdiction over the parties, jurisdiction over the subject matter or jurisdictional power to pronounce the particular decision that was rendered.

*State ex rel. State Ins. Fund v. JOA, INC.,* 2003 OK 82

> Personal and private rights may be waived, but law involving the power or structure of government may not be waived. *Commodity Futures Trading Commission v. Schor*, 478 U.S. 833, 848-851, 106 S. Ct. 3245, 92 L. Ed. 2d 675 (1986), (contrasting personal constitutional rights to the separation of powers principle). This rule is followed in Oklahoma where subject matter jurisdiction may not be established by waiver, consent, or stipulation. n4
> n4 *City of Lawton v. International Union of Police Associations*, 2002 OK 1, PP9-10, 41 P.3d 371, 375-376; *Shaffer v. Jeffery*, 1996 OK 47, P7, 915 P.2d 910; *Merchants Delivery Service v. Joe Esco Tire Co.*, 1972 OK 82, 497 P.2d 766, 767; *Hobbs v. German-American Doctors*, 78 P. 356, 14 Okla. 236, (court syllabus).

See Martin and Kramer, jurisdiction of Commission and Court: The Public Right/Private Right Distinction in Oklahoma Law, 25 Tulsa L.J. 535, 540 (Spr. 1990).

See Martin and Kramer, jurisdiction of Commission and Court: The Public Right/Private Right
Distinction in Oklahoma Law, 25 Tulsa L.J. 535, 540 (Spr. 1990).



OSCN

Previous Section | Top Of Index | This Point in

Next Section | Print Only

**Title 27. Eminent Domain**

# Oklahoma Statutes Citationized
## Title 27. Eminent Domain
### General Provisions
#### Section 12 - Inverse Condemnation

**Proceedings - Reimbursement of Expenses**

Cite as: O.S. §, __ __

Where an inverse condemnation proceeding is
instituted by the owner of any right, title or interest in
real property because of use of his property in any
public program or project described in Section 1 of
this act, the court, rendering a judgment for the
plaintiff in such proceeding and awarding
compensation for the taking of property, or the state's
attorney effecting a settlement of any such
proceeding, shall determine an award or allow to such
plaintiff, as a part of such judgment or settlement,
such sum as will, in the opinion of the court or the
acquiring entity's attorney, respectively, reimburse
such plaintiff for his reasonable costs, disbursements
and expenses, including reasonable attorney,
appraisal and engineering fees, actually incurred
because of such proceeding. A determination by the
court shall be appealable to the Supreme Court in the
same manner as any other final order.



oscn.net

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

Kris K. Agrawal, a Working Interest Owner and aggrieved party,
　　　　　　Plaintiff,
　　vs.　　　　　　　　　　　　　　　Case No.: 2026-CIV_____

U.S. Postal Service (USPS), Baron Haygood, Oklahoma State Treasurer, Oklahoma Corporation Commission, David Lansdale, Tyler Trout, Clark Dexter, Brent Smith, Everette Plummer, Robert Frost, Diana Blackwell, Billy Winsette, Ott Holleman, Roy Brigge individually and Trustee of Roy R. Brigge Revocable Trust, James Martin, American Heritage Investment Capital, Rafael Pinedo, Silverton Energy, Inc, Bill Malloy of Ada Energy Services, LLC, Sergio Ortega of Surge Plug and Abandon, LLC, John or Jane Does, 1 to 6.
　　　　　　Defendant(s).

**BRIEF IN SUPPORT OF PLAINTIFFS APPLICATION TO TRANSFER THE WELLS,**

**FACTS**

1. **Oklahoma Corporation Commission (OCC) received and accepted $25,000 via Cashier's Check as a Surety Bond to Operate the Wells in Oklahoma. OCC then assign an Operator number 25146 to Drill BB USA FUND on September 15, 2025.**
2. **Drill BB USA FUND (Drill) filed a Multiple well Transfer Form 1073 MW attaching wells names and API numbers on September 17, 2025.**
3. **OCC then required to file an assignment of Operating Rights to Drill BB USA FUND in Garvin County.**
4. **Certified Copy of assignments were provided to Brent Smith by Drill BB USA FUND on October 27, 2025. See Exhibit A, hand delivered and sent by certified mail to Brent Smith, who oversees well transfers.**
5. **This was third request to transfer wells after satisfying all requirements of OCC. Three times the filing fee of $250.00 was paid.**
6. **This Form was for eight (8) wells purchased from South Creek Petroleum by Good Gas, LLC.**

1

7. All assignments from Bankruptcy Trustee were provided.

**BRIEF IN SUPPORT FOR AN ORDER OF THIS COURT FOR JOURNAL ENTRY OF JUDGMENT TO TRANSFGER THE WELLS TO DRILL BB USA FUND**

8. OCC Rule 165:10-1-15 is Transfer of Operator ship of Wells.
9. The highlighted portion of the Rule is, in Exhibit C.
10. The former Operator was South Creek Petroleum who filed Bankruptcy.
11. The Bankruptcy Trustee sold the wells to Good Gas, LLC.

**(b) Before the operatorship of a well can be transferred to a new operator when the current or former operator is unavailable for signature, <u>one of the following may be submitted as proof of operatorship</u>: (1) A certified copy of a recorded lease or assignment transferring all rights, title, and interest to the wells described on Form 1073 or Form 1073MW to the new operator. (2) A certified copy of a journal entry of judgment rendered by a district court of Oklahoma having jurisdiction over the wells described on Form 1073 or Form 1073MW vesting legal title to the new operator. (3) A certified copy of a bankruptcy proceeding by the bankruptcy court having jurisdiction over the wells described on Form 1073 or Form 1073MW.**

12.    Drill BB USA satisfied items (1) and (3).

13. Item (2) states,

(2) A certified copy of a journal entry of judgment rendered by a district court of Oklahoma having jurisdiction over the wells described on Form 1073 or Form 1073MW vesting legal title to the new operator.

14. All wells are in Garvin County.  This Court has Jurisdiction over the wells.

15. Plaintiff Agrawal is a working-interest owner on all wells.

16. Plaintiffs request an Order of Court to Oklahoma Corporation Commission to transfer the wells to Drill BB USA Fund.

Respectfully Submitted

Kris K. Agrawal, Plaintiff, 405-326-0888

4133 North Lincoln Blvd., Oklahoma City, OK 73105.

2

DRILL BB USA FUND
P.O. Box 904
REDLANDS, CA 92373
617-299-6398
oilcrypto@aol.com

October 27, 2025

Oklahoma Corporation Commission
P.O. Box 171, Oklahoma City, OK 73101

**REGISTERED MAIL**

Dear Mr. Brent Smith

We have received rejection of NINE (9) wells.

1. Oklahoma Corporation Commission does have the authority to transfer any well that meets its rules and requirements and those wells do not comply can be deleted from 1073 MW List.
2. The required corrections have been made. We have deleted Willard no 1 from the 1073 MW list.
3. The word UNIT means one Lease.
4. East Gibson Sand UNIT is a 904-acre Lease.
5. Order no. 743640 is not provided. It cannot be viewed on OCC Web.
6. All ORDERS of Oklahoma Corporations Commission are Stayed.
7. Southcreek Petroleum filed Bankruptcy. OCC received the Notice of Bankruptcy.
8. Only Notice is required, All Orders of the Commission were stayed. The Google shows BK NO. 5:21-BK-13136 filed on November 30, 2021.
9. The same Bankruptcy no is shown on the UNIT Assignment from the Bankruptcy Trustee, Susan Manchester.
10. We include 1002A for eight wells in the Amended 1073MW Form submitted on 10-27-2025.
11. The Bankruptcy Trustee assigned the East Gibson Sand Unit to Good Gas, LLC.

**12. Please make sure that Willard no. 1 well is not Plugged.**

**13.    Willard no 1 is to be used as a producing oil well. It was a flowing Oil well when drilled.**

**14.    It was an injection well on the Gibson Sand Unit.**

1

Exhibit 1

**15.    But its status is changed to an OIL well by OCC.**

**16.    Since all OCC Orders were Stayed, the Bankruptcy Trustee sold the wells without any Order attached or restrictions free and clear of any liability.**

17. Good Gas, LLC assigned the rights to produce all wells to Drill BB USA FUND.
18. We submitted a recorded Assignment of Operating Rights to Drill B B USA Fund (name shortened but same as Drill BB Drill USA Fund) as filed by Document no. 2025-006292 in Book 2528 Pg 238-240 recorded in Garvin County. The original was supplied to you.
19. Today (10-25-2025) A copy has been downloaded from a website. Public uses it in lieu of certified Copy, which can be compared word for word.
20. Clauses 1, 6 and 8 provide rights to produce the wells.
21. Affidavit that Drill BB DRILL USA FUND and Drill BB USA FUND are the same.

So, we are providing your office with the following documents:

A. Two assignments of Operating Rights, both obtained from the County Clerk of Garvin County. One is a copy of direct mail received (you received original), and another is a download. It is a crime to alter official records.
B. Please note Clause 1, 6 and 8 showing grant of all rights, Title, and Interest to Operate the Wells.
C. Only the Garvin County Court must resolve any controversy or challenges to the assignments.
D. Corrected 1073 MW for eight (8) wells as shown, deleting Willard no. 1.
E. The completion reports ,1002A, for Willard well,


Respectfully Submitted,

Alfredo Valdez
Director

Enclosures:





**OIL AND GAS CONSERVATION DIVISION**
PO Box 171
Oklahoma City, OK 73101
405-521-2331
ogadmin@occ.ok.gov

**OKLAHOMA Corporation Commission**

10013

**Form 1073MW**
**Notice of Transfer of Multiple Oil or Gas Well Operatorship**
OAC 165:5-3-1(b)(1)(Q); OAC 165:10-1-7(b)(79); OAC 165:10-1-15
**PAYMENT REQUIRED $250.00 - Fee refunds are prohibited under OAC 165:5-3-1(a)(2)-(3)**

*Instructions:*
1. Required Payment: $250.00
2. Fill In The Complete Legal Description On All Successive Pages
3. Sort Wells In Order From "Lowest to Highest" By API Number
4. Use Leading Zeros For The Section, Township, and Range
5. A Current Form 1002A For Each Well Must Be On File With the OCC

**NUMBER OF WELLS LISTED:** 8

| *CURRENT OPERATOR* | | | |
|---|---|---|---|
| Name | | | Operator No. |
| Address | | | |
| City | State | Zip | |
| Phone No. | | FAX No./E-mail | |

I verify that I am the current operator of record with authority to transfer operatorship of these wells, that the facts presented herein are true and correct, and that I have completed this form as required by the above instructions.
**(Signatory must be listed on company's Form 1006B Operator's Agreement)**

Signature _____ Date _____

Printed Name _____

| *NEW OPERATOR* | | | |
|---|---|---|---|
| Name Drill BB USA Fund | | | Operator No. 25146 |
| Address P.O. Box 904 | | | |
| City Redlands | State CA | Zip 92373 | |
| Phone No. 405-510-4908 | | FAX No./E-mail oilcripto@aol.com | |

Being the new operator, as of the effective date of transfer, I accept the facts presented as being true and correct and accept the operational responsibility for the wells described herein.

**(Signatory must be listed on company's Form 1006B Operator's Agreement)**

Signature *Alfredo Valdez* Date 9-17-2025

Printed Name *Alfred Valdez*

I declare under penalty of perjury that I am authorized to act on behalf of the applicant and that I have read this form and any attachments to this form, that I have knowledge of the contents of this form and any such attachments, which was/were prepared by me or under my supervision and direction, and that the facts and information set forth herein are true, correct, and complete to the best of my knowledge and belief.

Signature: *Alfredo Valdez* Date: 9-17-2025
Printed Name: *Alfredo Valdez*

**If no current operator, please review and complete the below verification:**

I verify under oath that I have exercised due diligence to attempt to locate and obtain the signature of the current operator of record, according to OCC records, but no current operator can be located. Pursuant to OAC 165:10-1-15(b), I have attached a certified copy of a recorded lease or assignment, journal entry of judgment, or bankruptcy court proceeding by a court having jurisdiction over the wells described herein.

Signature: *Alfredo Valdez* Date: 9-17-2025
Printed Name: *Alfredo Valdez*

| OCC USE ONLY | | | |
|---|---|---|---|
| *Department:* | Received Date | Approved Date | Disapproved Date |
| Surety | | | |
| Well Records | | | |

IF THESE TRANSFERS ARE DISAPPROVED YOU HAVE NINETY (90) DAYS FROM THE DATE OF THE DISAPPROVAL NOTIFICATION TO CORRECT ANY DEFICIENCIES. IF YOU FAIL TO CORRECT THE DEFICIENCIES AND RESUBMIT THE FORM 1073MW WITHIN THE NINETY (90) DAY TIME PERIOD THE FORM 1073MW SHALL BE CONSIDERED WITHDRAWN UNLESS THE TIME IS EXTENDED BY WRITTEN REQUEST FOR GOOD CAUSE SHOWN AS DETERMINED BY THE MANAGER OF FIELD OPERATIONS.

*EXHIBIT 2*

Page 1 of 2

**165:10-1-15. Transfer of operatorship of wells**

(a) Before the operations of a well can be transferred to a new operator, the following must be submitted:

(1) The new operator, or transferee, must comply with 165:10-1-10 before a change in operator is approved.

(2) Change of operator Form 1073 or Form 1073MW must be signed by both the transferor and transferee, with both stipulating that the facts presented are true and correct as to the area covered and the wells being transferred. The new operator shall file Form 1073 or Form 1073MW to notify the Conservation Division of any change of operation of any oil or gas well within thirty (30) days of transfer of the well. Unless otherwise stated, the new operator assumes all responsibility for the wells specified within the boundaries of the outlined area. The Form 1073MW is intended to be used for multiple well transfers of ten (10) or more wells and must contain a list with the following information for each well:

(A) API number of the well;

(B) Well name and number;

(C) Legal location of the well, described by section, township, range and quarter, quarter, quarter section calls.

(3) A current Form 1002A Completion Report must be on file with the Conservation Division in accordance with OAC 165:10-3-25. Upon review by the Conservation Division, it may require additional information from the transferor and/or the transferee to assist in identifying the specific well(s) being transferred. The additional information may include, but not be limited to, footages from the south and west quarter section lines, and the drilling and completion dates.

(4) The Conservation Division shall notify both the transferor and transferee by electronic mail or regular mail within thirty (30) days of the Conservation Division's approval or disapproval of the transfer of operatorship for the subject well(s). If the Form 1073 or Form 1073MW is disapproved, the operator shall have ninety (90) days from the date of the disapproval notification to correct the deficiencies. If the operator fails to correct the deficiencies and to resubmit the Form 1073 or Form 1073MW within the ninety (90) day time period, the Form 1073 or Form 1073MW shall be considered withdrawn unless the time is extended by written request for good cause shown. The disapproval notification will explain the deficiencies that need correcting and will specify the expiration of the ninety (90) day period during which the deficiencies must be corrected.

(5) Compliance with 165:5-7-11 when and if operatorship was designated by orders of the Commission in pooling, increased density, and location exception applications.

(b) Before the operatorship of a well can be transferred to a new operator when the current or former operator is unavailable for signature, one of the following may be submitted as proof of operatorship:

(1) A certified copy of a recorded lease or assignment transferring all rights, title, and interest to the wells described on Form 1073 or Form 1073MW to the new operator.

(2) A certified copy of a journal entry of judgment rendered by a district court of Oklahoma having jurisdiction over the wells described on Form 1073 or Form 1073MW vesting legal title to the new operator.

(3) A certified copy of a bankruptcy proceeding by the bankruptcy court having jurisdiction over the wells described on Form 1073 or Form 1073MW.

(c) If an operator is not in compliance with an enforceable order of the Commission, the Conservation Division shall not approve any Form 1073 or Form 1073MW transferring well(s) to said operator until the operator complies with the order. The transferor of the well(s) listed on the Form 1073 or Form 1073MW remains responsible for the well(s) until any transfer is approved by the Commission.

[**Source:** Amended at 13 Ok Reg 2373, eff 7-1-96; Amended at 17 Ok Reg 802, eff 12-28-99 (emergency); Amended at 17 Ok Reg 1860, eff 7-1-00; Amended at 33 Ok Reg 593, eff 8-25-16; Amended at 37 Ok Reg 1121, eff 10-1-20; Amended at 40 Ok Reg 1747, eff 10-1-23]

EXHIBIT
3



**OIL AND GAS CONSERVATION DIVISION**
P.O. Box 52000
Oklahoma City, OK 73152-2000
405-521-2331
occcentralprocessing@occ.ok.gov

**OKLAHOMA**
Corporation
Commission



10013

### Form 1073MW
### Notice of transfer of multiple oil or gas well ownership
OAC 165:5-3-1(b)(1)(Q); OAC 165:10-1-7(b)(84)
PAYMENT REQUIRED
$250.00 per Form

**Instructions:**
1. Required Payment: $250.00
2. Fill in the complete legal description on all successive pages.
3. Sort wells in order of "lowest to highest" by API number.
4. Use leading zeros for the section, township, and range.

No. of wells listed: ___5___

| CURRENT OPERATOR        OCT 0 4 2023 | NEW OPERATOR |
|---|---|
| Name: Southernic Petroleum ca llc    OCC/OTC NO 23166 | Name: Oilfield Production Inc    OCC/OTC NO 24555 |
| Address 22519 MacArthur Alt | Address 2500 N. Oneard Blvd 107 |
| City Blanchard   State ok   Zip 73010 | City Oklahoma City   State ok   Zip 73116 |
| Phone No. 405-347-7304   FAX No./E-mail | Phone No. 405-413-0845   FAX No./E-mail ggmedny ovb€ashicon |
| I verify that I am the legal operator of record with authority to transfer operatorship of this well, that the facts presented herein are true and correct, and that I have completed this form as required by the above instructions. (Signatory must be listed on company's Form 1006B Operator's Agreement) | Being the new operator, as of the effective date of transfer, I accept the facts presented as being true and correct and accept the operational responsibility for the well on the described property. (Signatory must be listed on company's Form 1006B Operator's Agreement) |
| Signature | Signature Robert R Reed president |
| Name & Title (Printed) | Name & Title (Printed) Natalie Arnold |
| Signed and sworn to before me | Signed and sworn to before me |
| This _____ day of _____, ____. | This 6 day of Sept 2023 |
| Notary public | Notary public Natalie Arnold |
| My commission expires: | My commission expires: April 1, 2027 |

If no current operator, please sign below:

I verify under oath that I have exercised due diligence in attempting to locate the current operator of record according to OCC records, who has abandoned the listed well/lease and cannot be located to obtain signature. I have attached a certified copy of the recorded lease or assignment, or certified copies of a journal entry of judgment or bankruptcy proceeding pursuant to OAC 165:10-1-15(b).

Signature: _____

Signed and sworn to before me this _____ day of _____, ____.

Notary Public: _____    My commission expires: _____

| OCC USE ONLY | | |
|---|---|---|
| Department | Received | Approved Date |
| Surety | | |
| Well Records | OCT 0 4 2023 | OCT 0 4 2023 |

Page 1 of 2

Exhibit 4

| If no current operator, please sign below: |
|---|

I verify under oath that I have exercised due diligence in attempting to locate the current operator of record according to OCC records, who has abandoned the listed well/lease and cannot be located to obtain signature. I have attached a certified copy of the recorded lease or assignment, or certified copies of a journal entry of judgment or bankruptcy proceeding pursuant to OAC 165:10-1-15(b).

Signature: _____

ANTHONY J. HINDMAN
Notary Public
State of Oklahoma
Commission #21006432 Exp: 05/12/25

Signed and sworn to before me this 28th day of September, 2023.

Notary Public: _____    My commission expires: 05/12/2025

| OCC USE ONLY | | |
|---|---|---|
| Department: | Received | Approved Date |
| Surety | | |
| UIC | | |
| Well Records | | |

Fill out the table below, or copy and paste the information from your spreadsheet into the attached Excel file. The attached file may be seen by clicking on the paper clip icon at the far left. Double click on the Excel file "Well List.xlsx", copy and paste your data into the appropriate columns, save and close the attachment. Once the rest of the form is filled out, save the form and submit it with your payment.

| 10 Digit API | Well Name | Well Number | Type(Oil, Gas or Dry) | Status(ND, SP, AC, TA, or TM | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | CM If no Leave Blank | Comments |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3508730081 | FRANK DENNIS etal | 1 | Gas | AC | 13 | 09N | 04W | C | SE | NE | | | McLane County, BK |
| 3504921383 | BLEVINS | 1-32 | Oil | AC | 32 | 02N | 01W | C | SE | NE | | | Garvin County, BK |
| 3504922625 | IVEY | 1 | Oil | AC | 12 | 04N | 03W | NE | NE | SE | | | Garvin County, BK |
| 3504921072 | East Gibson SU-LANE (Tr 1)1 | | Oil | AC | 05 | 04N | 02W | SE | NW | NW | | | Garvin County, BK |
| 3504925012 | East Gibson Sand Unit-WSW 1 | | Water Input | A=C | 06 | 04N | 02W | SE | NW | NW | | | Garvin County, BK |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

occ use

0.60

# TRUSTEE'S ASSIGNMENT OF OIL & GAS INTEREST



I-2023-008820                    Book 2873 Pg 81
07/21/2023 8:00am              Pg 0081-0081
                Fee: $18.00  Doc: $0.00
**KNOW ALL MEN BY THESE PRESENTS:**          Pam Beller - McClain County Clerk
                                State of OK

This assignment and bill of sale is executed and delivered by Susan Manchester, as Trustee appointed for **SOUTHCREEK PETROLEUM CO., LLC, Debtor in Case No. BK-21-13136** in the United States Bankruptcy Court for the Western District of Oklahoma (hereinafter referred to as "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, convey, assign and deliver unto **GOOD GAS LLC, 4133 N. LINCOLN, OKLAHOMA CITY, OK 73105,** (hereinafter referred to as "Assignee"), all right and title in and to all of the oil and gas in and under and that may be produced from the following described lands situated in McClain County, State of Oklahoma, to-wit:

## Frank Dennis No. 1

**NE/4 Section Thirteen (13), Township Nine North (9N), Range Four West (4W) McClain County, Oklahoma**

Assignor's intent is to assign all its interest in the above described property to the Assignee.

To have and to hold all of the properties, together with all of the rights, titles, interests, thereunto appertaining unto Assignee and its respective successors, legal representatives and assigns forever, and the exception hereinafter described. This assignment is made without warranties of title, either express or implied.

Effective Date of this Assignment: 20th day of June 2023.

SUSAN MANCHESTER, Trustee for
Southcreek Petroleum Co., LLC, Debtor

ACKNOWLEDGEMENT

By _____, Deputy
Return to:
GoodGas LLC

STATE OF OKLAHOMA        )
                            ) ss.
COUNTY OF OKLAHOMA    )

Before me the undersigned, a Notary Public, in and for said County and State, on this _19_ day of July, 2023 personally appeared Susan Manchester, known to be the identical persons who executed the foregoing instrument, and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

My Commission Expires:
# 22008313
EXP. 06/17/26

Notary Public

# TRUSTEE'S ASSIGNMENT OF OIL & GAS INTEREST

## KNOW ALL MEN BY THESE PRESENTS:

This assignment and bill of sale is executed and delivered by Susan Manchester, as Trustee appointed for **SOUTHCREEK PETROLEUM CO., LLC**, Debtor in Case No. **BK-21-13136** in the United States Bankruptcy Court for the Western District of Oklahoma (hereinafter referred to as "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, convey, assign and deliver unto **GOOD GAS LLC, 4133 N. LINCOLN, OKLAHOMA CITY, OK 73105**, (hereinafter referred to as "Assignee"), all right and title in and to all of the oil and gas in and under and that may be produced from the following described lands situated in Garvin County, State of Oklahoma, to-wit:

### Blevins 1-32

SE/4 NE/4 of Section Thirty-Two (32), Township Two North (2N), Range One West (1W), Garvin County, OK.

Assignor's intent is to assign all its interest in the above described property to the Assignee.

To have and to hold all of the properties, together with all of the rights, titles, interests, thereunto appertaining unto Assignee and its respective successors, legal representatives and assigns forever, and the exception hereinafter described. This assignment is made without warranties of title, either express or implied.

Effective Date of this Assignment: 20th day of June 2023.

_Susan Manchester, Trustee_
SUSAN MANCHESTER, Trustee for
Southcreek Petroleum Co., LLC, Debtor

## ACKNOWLEDGEMENT

STATE OF OKLAHOMA    )
                     ) ss.
COUNTY OF OKLAHOMA    )

Before me, the undersigned, a Notary Public, in and for said County and State, on this ___ day of July, 2023 personally appeared Susan Manchester, known to be the identical persons who executed the foregoing instrument, and acknowledged to me that he executed the same as a free and voluntary act and deed for the uses and purposes therein set forth.

Notary Public

# 22008313
EXP. 06/17/26
My Commission Expires

VIEW ADDITIONAL LAND RECORDS AT COUNTY RECORDS

2023-005081
07/21/2023 10:45am
Fee: $18.00 Doc: $0.00
Book 2944 Pg 192
Pg 0192-0192
Lori Fulks - Garvin County Clerk
State of OK

# TRUSTEE'S ASSIGNMENT OF OIL & GAS INTEREST

KNOW ALL MEN BY THESE PRESENTS:

This assignment and bill of sale is executed and delivered by Susan Manchester, as Trustee appointed for **SOUTHCREEK PETROLEUM CO., LLC, Debtor in Case No. BK-21-13136** in the United States Bankruptcy Court for the Western District of Oklahoma (hereinafter referred to as "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, convey, assign and deliver unto **GOOD GAS LLC, 4133 N. LINCOLN, OKLAHOMA CITY, OK 73105,** (hereinafter referred to as "Assignee"), all right and title in and to all of the oil and gas in and under and that may be produced from the following described lands situated in Garvin County, State of Oklahoma, to-wit:

## Ivey No. 1

### NE/4 SE/4 Section Twelve (12), Township Four North (4N), Range Three West (3W)
### Garvin County, OK

Assignor's intent is to assign all its interest in the above described property to the Assignee.

To have and to hold all of the properties, together with all of the rights, titles, interests, thereunto appertaining unto Assignee and its respective successors, legal representatives and assigns forever, and the exception hereinafter described. This assignment is made without warranties of title, either express or implied.

Effective Date of this Assignment: 20th day of June 2023.

_____
SUSAN MANCHESTER, Trustee for
Southcreek Petroleum Co., LLC, Debtor

ACKNOWLEDGEMENT

STATE OF OKLAHOMA    )
                     ) ss.
COUNTY OF OKLAHOMA    )

Before me the undersigned, a Notary Public, in and for said County and State, on this _19_ day of July, 2023 personally appeared Susan Manchester, known to be the identical persons who executed the foregoing instrument, and acknowledged to me that he executed the same as a free and voluntary act and deed for the uses and purposes therein set forth.

# 22008313
EXP. 06/17/26
My Commission Expires: 6/17/26

_____
Notary Public

1-2023-005080      Book 2444 Pg 191
07/21/2023 10:45am      Pg 0191-0191
Fee: $18.00  Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

# TRUSTEE'S ASSIGNMENT OF OIL & GAS INTEREST

KNOW ALL MEN BY THESE PRESENTS:

This assignment and bill of sale is executed and delivered by Susan Manchester, as Trustee appointed for **SOUTHCREEK PETROLEUM CO., LLC, Debtor in Case No. BK-21-13136** in the United States Bankruptcy Court for the Western District of Oklahoma (hereinafter referred to as "Assignor"), for and in consideration of the sum of Ten Dollars ($10.00) and other valuable consideration in hand paid, the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, convey, assign and deliver unto **GOOD GAS LLC, 4133 N. LINCOLN, OKLAHOMA CITY, OK 73105,** (hereinafter referred to as "Assignee"), all right and title in and to all of the oil and gas in and under and that may be produced from the following described lands situated in Garvin and McClain County, State of Oklahoma, to-wit:

## EAST GIBSON SAND UNIT

**LANE NO. 1 (Tr. 11) – NW/4 NW/4 Sec. 6-4N-2W, Garvin County, OK**
**ROBERTSON NO. 1 (Tr. 10) (Injection Well) W/2 NE/4 Sec. 6-4N-2W, Garvin County, OK**
**WILLARD NO. 1 (Tr. 7) (Injection Well) Sec. 32-5N-2W, McClain County, OK**

Assignor's intent is to assign all its interest in the above described property to the Assignee.

To have and to hold all of the properties, together with all of the rights, titles, interests, thereunto appertaining unto Assignee and its respective successors, legal representatives and assigns forever, and the exception hereinafter described. This assignment is made without warranties of title, either express or implied.

Effective Date of this Assignment: 20th day of June 2023.

_Susan Manchester, Trustee_

SUSAN MANCHESTER, Trustee for
Southcreek Petroleum Co., LLC, Debtor

### ACKNOWLEDGEMENT

STATE OF OKLAHOMA    )
                     ) ss.
COUNTY OF OKLAHOMA    )

Before me, the undersigned, a Notary Public, in and for said County and State, on this _19_ day of July, 2023 personally appeared Susan Manchester, known to be the identical persons who executed the foregoing instrument, and acknowledged to me that he executed the same as a free and voluntary act and deed for the uses and purposes therein set forth.

# 22008313
EXP. 06/17/26
PUBLIC
OF OKLA
My Commission expires: _6/17/26_

_Peggy Skinner_
Notary Public



**OKLAHOMA**
Corporation
Commission

Oklahoma Corporation Commission
P.O. Box 52000
Oklahoma City, OK 73152-2000
405-521-2211

**IMS Receipt**



2408441

## RECEIPT

**Receipt Number**
2408441

**Receipt Date**
Oct 2, 2023

## Payments

| Type ⌄ | Date ⌄ | Payor Name ⌄ | Amount ⌄ |
|--------|--------|--------------|----------|
| Check | Oct 2, 2023 | OIL FIELD PRODUCTION INC | $250.00 |

1 total

## Applied Invoices

| Invoice Number ⌄ | Amount ⌄ | Owed ⌄ |
|------------------|----------|--------|
| 3464582 | $250.00 | $0.00 |

1 total

| | |
|---|---|
| Payments: | **$250.00** |
| Applied Invoice(s): | **- $250.00** |
| Receipt Balance: | **$0.00** |

## Comments

OP# 24595 CHECK# 1026 1073MW

IMS System

8:51 

< 42    

**Alfredo** ›

## (405) 521-2211

## Good Morning Alfredo,

## Thank you for your email, please see information below.

## To become an operator in the State of Oklahoma, the entity or individual would be required to file the following items:

## • Category B Sure-

\+    iMessage

8:52 

< 42        

**Alfredo >**

• Category B Sure-
ty in the amount of
$25,000
• Category B Sure-
ty Instruments are:
■    Cash
■    Cashier's
Check
■    Certificate of
Deposit
■    Bond on form
1006
■ Letter of Cred-
it on form 1006C
• Form 1006B
with a $100 filing fee
• If anything other

+    iMessage    




**OFFICE OF THE SECRETARY OF STATE**

**STATE OF OKLAHOMA**

# AMENDED
# CERTIFICATE OF INCORPORATION

*WHEREAS*, the Amended Certificate of Incorporation of a benefit corporation

### DRILL BB USA FUND

*has been filed in the office of the Secretary of State as provided by the laws of the State of Oklahoma.*

*NOW THEREFORE, I, the undersigned, Secretary of State of the State of Oklahoma, by virtue of the powers vested in me by law, do hereby issue this certificate evidencing such filing.*

*IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the Great Seal of the State of Oklahoma.*



*Filed in the city of Oklahoma City this*
*31st day of March, 2025.*

_____
**Secretary of State**

OIL AND GAS CONSERVATION DIVISION
P.O. Box 52000
Oklahoma City, OK 73152-2000
405-521-2331
occcentralprocessing@occ.ok.gov

 **OKLAHOMA**
Corporation
Commission


10023

Form 1006B
Operator's Agreement to Plug Oil, Gas, and Service Wells within the State of Oklahoma  OAC 165:10-1-10; OAC 165-5-1-1(b)(5)(B)-(V)
**PAYMENT REQUIRED**

Business addresses, telephone numbers, and e-mail address are to be provided in this form and in attachments to this form.

OPERATOR: **DRILL BB USA FUND**          OPERATOR NO.: _____
MAILING ADDRESS: **P.O. BOX 904**
CITY: **REDLANDS** STATE: **CALIFORNIA** ZIP: **92373**
PHYSICAL ADDRESS: **4133 N. LINCOLN BLVD**
(CANNOT BE A POST OFFICE BOX)
CITY **Oklahoma City** STATE: **Oklahoma** ZIP: **73105**
PHONE NUMBER: **405 510-4908** FAX NUMBER: _____
CONTACT: **Newton Agrawal** E-MAIL: **oilcrypto@AOL.com**

**One Box Must Be Checked**

| | | | |
|---|---|---|---|
| ☐ Address Change only no payment required | ☒ 0 Wells $100 | ☐ 26-100 Wells $500 | ☐ 201-500 Wells $750 |
| | ☐ 1-25 Wells $250 | ☐ 101-200 Wells $750 | ☐ Over 500 Wells $1,000 |

The above-described operator states th[at]          ator is authorized to do business within the State of Oklahoma,
that the operator proposes to drill and/[or]          well or wells for the exploration, development, or production
of oil and/or gas, or as an inject[ion]          [o]ther service well within the State of Oklahoma, and
that the operator hereby agrees to          [to] plug each such well in compliance with the laws of
the State of Oklahoma and the rules          Corporation Commission of the State of Oklahoma.

The operator hereby agrees that if          [deter]mines, after notice and hearing, that
neglected, failed, or refused to plug an[y]          to be plugged and abandoned, or replu[g]
neglected, failed or refused to close any          remove or cause to be removed trash
compliance with the rules of OAC 165          [w]ill forfeit from the operat[or]
negotiable instrument or shall pay to this
the cost of plugging the well, closure of a[ny]

I declare and state that I have perso[nal]
Gas, and Service Wells within the State o[f]
with the data and facts stated herein to b[e]
declare that the operator has met the requ[ire]
report, map or drawing or other statement
et seq. or by any order, rule or regulation o[f]
to be filed with the Commission or with
files or causes the same to be filed with
material matter which he or she knows to b[e]
shall be punished by imprisonment fo[r]
(10) years.

[Dat]ed this **15th** day of **August**

[Signatu]re of Operator, Officer, Partner, or Principal o[f]

**Newton  Aarawal**

I-2025-006622    Book 2537 Pg 62
10/27/2025 1:36pm    Pg 0062-0069
Fee: $32.00 Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK



## ASSIGNMENT AND BILL OF SALE AND CONVEYANCE

This Assignment, Bill of Sale and Conveyance is effective as of the day of August 18, 2025 (hereinafter referred to as the "effective date") and is from General Minerals Corporation, Exxon Oil and Gas, Inc., Oil Recovery Systems, Inc., Deep Oil Drilling, LLC, Deep Earth Energy, LLC, Good Gas, LLC and other entities where wells are located in the State of Oklahoma, due to refusal of Oklahoma Corporation Commission to transfer the wells otherwise, 4133 North Lincoln Blvd, Oklahoma City, Ok 73105 , hereinafter Assignor, DRILL BB USA FUND, a California corporation, hereinafter Assignee. (OPERATOR).

For Ten Dollars ($10.00) and other good and valuable considerations, the receipt and sufficiency of which is hereby acknowledged, Assignor hereby quitclaims, bargains, sells, convey and assigns to Assignees, subject to the limitations, conditions, reservations, and exceptions hereinafter set forth, 100.00 percent (100%) rights to Well Bore only and Operating Rights of Assignor's, title and interest in and to the following real and personal property (hereinafter referred to . collectively as the "Properties") with exceptions noted below:

1.     Well Bore rights in all wells attached in Exhibits A, B, C, D, E and F in Garvin, McLain, Texas, Woodward, Major, Harper, Ellis, Beaver, Caddo, Canadian, Cimmaron, Cleveland, Creek, Garfield, Grant, Hughes, Haskell, Logan, Okmulgee, Oklahoma, Pontotoc, and Seminole, Counties, Oklahoma.

2.     ASSIGNORS hereby grant rights to drilling any future oil and gas wells, water injection wells, and in existing wellbore equipment, tanks, pumps, pipelines, water lines, roads, building, easement and rights-of-way, machinery, facilities, fixtures, electrical and pumping equipment and other personal property located on and used in operations on the well sites.

3.     Sale, lien, equipment removal, mortgaging or hypothecation of the wells, Oil and Gas Leases and equipment is prohibited.

4.     The Assignees or their affiliates are jointly liable for any damage caused to the lease premises or the wells and equipment.

5.     The Assignee is given power to Operate the wells or appoint an Operator and pay operating expenses. No Operator, Unit Operator or Contractor lien is allowed.

EXHIBIT
5

6.     ASSIGNORS shall continue to market oil and gas and pay royalties.

1

I-2025-006622          Book 2537 Pg 63
10/27/2025 1:36pm          Pg 0062-0069
Fee: $32.00  Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

7ASSIGNEE hereby accepts the wellbore rights without warranty of title, either express or implied, and all the terms, conditions, covenants,

7.      obligations, reservations, exceptions and agreements hereof shall constitute covenants running with the land and same shall inure to the benefit of and be binding upon the parties hereto and their respective personal representatives, heirs, successors and assigns.

8.      Any violation of covenants will VOID this assignment and subject damages against ASSIGNEE.

9.      ASSIGNEE agrees that the replacement cost of the wells allowed to be operated. is $6,000,000 (Six million dollars).

10.     This assignment is void upon filing of Bankruptcy by the Operator.

11.     This assignment can be withdrawn by the Assignors without the Consent of the OPERATOR/ASSIGNEE.

**IN WITNESS WHEREOF**, the said Grantor(s) has signed and sealed these presents the day and year first above written.

**ASSIGNORS:**

**General Minerals Corporation,** Exxon Oil and Gas, Inc., Oil Recovery Systems, Inc., Deep Oil Drilling, LLC, Deep Earth Energy, LLC, Good Gas, LLC. etal

Newton Agrawal, President, Manager
By: Kris K. Agrawal, Vice President/ Assistant Manager

STATE OF OKLAHOMA
COUNTY OF GARVIN' s.s.

        Before me, the undersigned, a Notary Public, in and for said County and State, on this 27th day of October 2025 appeared Kris K. Agrawal, known to me the identical person who subscribed the name of the makers thereof to the within and foregoing instrument as its authorized Agent and acknowledged to me that he executed the same as his free and voluntary act and deed, as the free and voluntary act and deed of such company, for the uses and purposes therein set forth.

Notary PUBLIC ⟨signature⟩ My Commission Expires: Sept 29, 2029

CRYSTAL QUINTANILLA
Notary Public - State of Oklahoma
Commission Number 25011384
My Commission Expires Sep 29, 2029

2

I-2025-0066286   Book 2537 Pg 64
10/27/2025 1:36pm        Pg 0062-0069
Fee: $32.00   Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

## AFFIDAVIT AND GRANT

I, Kris K. Agrawal of Lawful age do hereby state that As an Incorporator, I declare that"

Drill BB DRILL USA FUND and DRILL BB USA FUND are one and the same company, owning all rights to produce wells and drill on any lands described in Exhibit  incorporated herein.

Affiant Sayeth nothing else.

_Kris K. Agrawal_ (signature)

Kris K. Agrawal, AFFIANT                    Date: October 25, 2025

STATE OF OKLAHOMA
COUNTY OF Oklahoma' s.s.

Before me, the undersigned, a Notary Public, in and for said County and State, on this 25tyh day of October 25, 2025 appeared Kris K. Agrawal, known to me the identical person who subscribed the name of the makers thereof to the within and foregoing instrument as its authorized Agent  and acknowledged to me that he executed the same as his free and voluntary act and deed, as the free and voluntary act and deed of such company, for the uses and purposes therein set forth.

Notary PUBLIC _____

```
ROBERT SPITZER
Notary Public - State of Oklahoma
Commission Number 18007308
My Commission Expires Jul 24, 2026
```

My Commission Expires: July 24 2026

I-2025-006622
10/27/2025 1:36pm
Book 2537 Pg 65
Pg 0062-0069
Fee: $32.00   Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

| API No. | Well Name | Well No. | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | Approved | Disapproved | Comments/Disapproval Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 35-049-21383 | BLEVINS | 1-32 | 32 | 02N | 01W | C | SE | NE | | | | |
| 35-049-21072 | EAST GIBSON SU (LANE) | 1 | 06 | 04N | 02W | SE | NW | NW | | | | |
| 35-049-21233 | EASTGIBSON SU(LANE) | 2 | 06 | 04N | 02W | C | W2 | NW | | | | |
| 35-049-21012 | WSW GIBSON SAND UNIT | WSW | 06 | 04N | 02W | C | W2 | NW | | | | |
| 35-049-21259 | EAST GIBSON SU(ROBERTSON) | 1 | 06 | 04N | 02W | W2 | NW | NW | | | | |
| 35-049-21117 | EAST GIBSON SU(LEDGERWOOD) | 1 | 04 | 04N | 02W | W2 | NW | NW | | | | |
| 35-087-20616 | FRANK DENNIEES,ETAL | 1 | 06 | 04N | 02W | E2 | NW | NN | | | | |
| 35-087-00296 | FRANK DENNIEES,ETAL | 1 | 13 | 09N | 04W | SE | SW | NE | | | | |
| 35-087-30081 | EAST GIBSON SU (WILLARD) | 1 | 32 | 05N | 02W | C | W2 | NE | | | | |
| 35-587-20616 | HASSIE 2 (HASSIE "A") | 1 | 31 | 05N | 04W | SE | SE | SE | SW | | | |
| 35-087-72057 | EAST GIBSON SU (PUMPHREY) — IVY | 1 | 11/12 | 54N/63 | W2 | NE | NE | SE | | | | |
| 35-750084 | EAST GIBSONN SU (CARSON) | 1A | 31 | 05N | 02W | NW | SW | NW | NNW | | | |
| 35-22801 | BROMIDE | 2 | 07 | 03N | 01W | NE | NW | NE | | | | |
| 35-22802 | BARNEY SANDERS | 1 | 07 | 03N | 01W | W2 | SE | NE | | | | |
| 20635 | MARTHA | 1 | 07 | 03N | 01W | SW | NE | NE | | | | |
| 20885 | EDITH | 1 | 05 | 03N | 01W | SW | NE | SW | | | | |
| 20949 | HAZEL | 1 | 05 | 03N | 01W | W2 | W2 | SE | SW | | | |
| 20895 | JOHNNIE | 1-5 | 05 | 03N | 01W | C | SW | NW | SE | | | |
| 00436 | PLUMMER | 1 | 05 | 03N | 01W | SW | NW | SW | | | | |
| PLUMMER | PLUMMER | 1 | 01 | 03N | 02W | SE | SE | SE | | | | |
| PLUMMER | A.C. Madewl | 1 | 33 | 2N | 1W | SE | SW | | | | | |

Exhibit A

## 1073MW WELL LIST

I-2025-006622
Book 2537 Pg 66
10/27/2025 1:38pm    Pg 0062-0069
Fee: $32.00    Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

| API No. | Well Name | Well No. | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | Approved | Disapproved | Comments/Disapproval Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3501522063 | kimble | 1-19 | 19 | 12N | 13W | c | w2 | se4 | nw4 | | | |
| 3502520921 | SCHOOLFIELD | 1 | 30 | 06N | 09E | SW | w2 | NE | NE | | | |
| 3502520118 | GOWDY | 2 | 11 | 01N | 09E | C | SE | NE | NE | | | |
| 350633736B | PHILLIPS | 1-12 | 12 | 06N | 09E | SW | SE | NE | NE | | | |
| 3506322317 | SKINNER DAVIS | 1 | C | W2 | NE | SW | SE | NE | | | | |
| 3506322359 | SKINNER DAVIS | 2 | 12 | 06N | 09E | W2 | SE | SE | | | | |
| 350632234l | CROCKETT | 1 | 12 | 06N | 09E | NW | NE | SE | NE | | | |
| 3515300045 | STATE | 1-36 | 36 | 22N | 22W | C | SW | NE | NE | | | |
| 3509324063 | LEE | | 36 | 21N | 09W | N2 | S2 | NW | NE | | | |
| 3505920040 | STATE | 2-22 | 22 | 26N | 21W | C | NW | NW | SE | | | |
| 3506321997 | BANKS | 2 | 12 | 06N | 09E | C | N2 | NW | | | | |
| 3506321899B | JASON-B | 2 | 06 | 06N | 10E | NE | NE | NE | | | | |
| 3506322534 | SKINNER DAVIS | 5 | 12 | 06N | 09E | C | NE | NE | | | | |
| 350509 389189 | STATE 16-1B | 1B | 16 | 14N | 4N | NE | SW | RW | NE | | | |
| 3561721326 | SCHIEBER | 14-2-29 | 29 | 14N | 7W | C | SW | NW | | | | |
| 3512305705 | CO Burke | 1 | 36 | 5N | 4E | NE | NE | RW | | | | |
| | Denver Burke | 1 | 25 | 5N | 4E | | | | | | | |
| | Hickman | | | | | | | | | | | |
| 35043 284 | Thompson | 5 | | 20N | 2W | | | | | | | |
| 153 216 56 | Vreeland | | 26 | 14N | 5W | | | | | | | |
| 017230 74 | Barbour A | 26-1 | 26 | 14N | 5W | | | | | | | |

Exhibit B

## 1073MW WELL LIST

| API No. | Well Name | Well No. | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | Approved | Disapproved | Comments/Disapproval Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3504521549 | Zola Faye | 1-23 | 23 | 24n | 25w | c | E2 | | | | | |
| 3504521637 | BARRET | 10-2 | 10 | 24N | 25W | C | W2 | NW | NW | | | |
| 3504521872 | KNOWLES | 8-1 | 08 | 18N | 25W | C | NE | NE | | | | |
| 3505935290 | PEARSON UNIT -B | 1 | 35 | 27N | 24W | C | SE | | | | | |
| 35-00721440 | DICKEY | 1 | 19 | 06N | 24W | C | SE | NW | | | | |
| 35-00722243 | PLETTE | 1-4 | 04 | 05N | 21E | C | SE | NW | | | | |
| 35-00721396 | ANGLETON | 1 | 21 | 05N | 23E | C | NW | | | | | |
| 35-00722777 | REEVES | 1 | 14 | 01N | 24E | C | NE | NE | | | | |
| 35-007-21686 | SMYRES | 1 | 16 | 05N | 21E | SW | SE | | | | | |
| 35-007-36236 | EVANS | B-1 | 04 | 04N | 25E | SW | NE | SE | | | | |
| 35-007-24077 | JERRY | 1 | 04 | 04N | 21E | N2 | NE | SE | NW | | | |
| 35-007-22119 | MAHANAY | 1 | 34 | 02N | 24E | C | NW | | | | | |
| 35-007-36257 | MILES E | 1 | 04 | 04N | 24E | C | NE | SW | | | | |
| 35-007-21581 | OLMSTEAD | 1 | 26 | 05N | 27E | C | SW | SW | | | | |
| 35-061-20488 | Geofrey Barett(addn 1-15) | 2 | 15 | 09N | 18E | E2 | E2 | E2 | SW | | | |
| 35-061-20521 | ARMY CORPS OF ENGRS | 1-34 | 34 | 10N | 18E | C | NW | SW | NE | | | |
| 35-061-20564 | RUTHY LEE (HOLLIS#1) | 1 | 15 | 09N | 18E | C | SW | SW | | | | |
| 35-061-20622 | MARY LEE | 1 | 10 | 09N | 18E | SE | NW | SE | | | | |
| 35-061-20686 | SCOTT PATRICK | 1 | 10 | 09N | 18E | NW | NW | NE | SE | | | |
| 35-061-20784 | PATRICK STEPHEN | 1 | 10 | 09N | 18E | NE | NW | NWNNE | NE | | | |
| 35-061-20823 | ARTHUR SHERMAN | 1 | 15 | 09N | 18E | C | SE | SE | | | | |

Exhibit C

I-2025-006622
10/27/2025 1:36pm
Fee: $32.00   Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

Book 2537 Pg 67
Pg 0062-0069

**1073MW WELL LIST**

I-2025-006822
10/27/2025 1:36pm    Doc: $0.00
Fee: $32.00
Lori Fulks - Garvin County Clerk
State of OK
Book 2537 Pg 68
Pg 0062-0069

| API No. | Well Name | Well No. | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | Approved | Disapproved | Comments/Disapproval Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 111-24122 | AMMONS | 1 | 32 | 14N | 14E | NE | NW | NE | | | | |
| 111-24728 | AMMONS | 3 | 32 | 14N | 14E | SW | SE | SW | NE | | | |
| 111-24774 | AMMONS | 4 | 32 | 14N | 14E | SW | SE | NE | NE | | | |
| 111-24898 | DEARMON | 1 | 32 | 14N | 14E | SE | SE | SW | SE | | | |
| 111-25505 | DEARMON | 2 | 32 | 14N | 14E | N2 | NE | NW | SE | | | |
| 111-25506 | DEARMON | 3 | 32 | 14N | 14E | NW | NW | NW | SE | | | |
| 111-25520 | DEARMON | 4 | 32 | 14N | 14E | W2 | W2 | NW | SE | | | |
| 111-25511 | DEARMON | 5 | 32 | 14N | 14E | E2 | W2 | NW | SE | | | |
| 111-25511 | DEARMON | 6 | 32 | 14N | 14E | NE | SE | NW | SE | | | |
| 111-25512 | DEARMON | 7 | 32 | 14N | 14E | NE | SE | SW | SE | | | |
| 111-25542 | DEARMON | 19 | 32 | 14N | 14E | E2 | SE | NW | SE | | | |
| 111-25514 | DEARMON | 9 | 32 | 14N | 14E | SE | SE | NW | SE | | | |
| 111-25515 | DEARMON | 10 | 32 | 14N | 14E | S2 | S2 | NW | SE | | | |
| 111-25534 | DEARMON | 11 | 32 | 14N | 14E | SE | SW | NW | SE | | | |
| 111-24608 | JACOBS | 2 | 32 | 14N | 14E | NW | NE | SE | | | | |
| 111-25536 | DEARMON | 13 | 32 | 14N | 14E | C | N2 | SW | SE | | | |
| 111-25537 | DEARMON | 14 | 32 | 14N | 14E | E2 | NE | SW | SE | | | |
| 111-25536 | DEARMON | 15 | 32 | 14N | 14E | C | N2 | SW | SE | | | |
| 111-25539 | DEARMON | 16 | 32 | 14N | 14E | N2 | S2 | SW | SE | | | |
| 111-24186 | ROBINSON | 1-A | 33 | 14N | 14E | SW | SW | SW | NE | | | |

Exhibit D

# 1073MW WELL LIST

I-2025-006622
10/27/2025 1:36pm
Fee: $32.00   Doc: $0.00
Lori Fulks - Garvin County Clerk
State of OK

Book 2537 Pg 69
Pg 0062-0069

| API No. | Well Name | Well No. | Sec | Twn | Rge | Qtr | Qtr | Qtr | Qtr | Approved | Disapproved | Comments/Disapproval Reason |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 037-39223 | SILVER RFU | 28-1 | 21 | 19N | 08E | NW | SW | SW | | | | |
| 037-13052 | SILVER RFU | 26-1 | 21 | 19N | 08E | SW | NW | SW | | | | |
| 037-13061 | SILVER RFU | 20-1W | 21 | 19N | 08E | SW | SW | NW | | | | |
| 037-39208 | SILVER RFU | 27-2 | 20 | 19N | 08E | NW | SE | SE | | | | |
| 037-13031 | SILVER RFU-2 | 27-1 | 20 | 19N | 08E | SE | SE | SE | | | | |
| 037-13036 | SILVER RFU | 22-4 | 20 | 19N | 08E | NE | NE | SW | | | | |
| 037-13037 | SILVER RFU | 22-5 | 20 | 19N | 08E | SW | NE | SW | | | | |
| 037-13025 | SILVER RFU | 16-1W | 20 | 19N | 08E | SE | SE | NE | | | | |
| 037-39194 | SILVER RFU | 16-4 | 21 | 19N | 08E | NE | SW | NE | | | | |
| 037-13022 | SILVER RFU | 16-5 | 20 | 19N | 08E | SW | SW | SE | | | | |
| 037-13032 | SILVER RFU | 23-1 | 21 | 19N | 08E | NE | NE | NE | | | | |
| 037-00165 | SILVER RFU | 17-1W | 21 | 19N | 08E | NW | NW | NW | | | | |
| 037-13058 | SILVER RFU | 18-3 | 21 | 19N | 08E | NE | SW | SW | | | | |
| 037-39231 | SILVER RFU | 19-4 | 21 | 19N | 08E | SW | NW | NW | | | | |
| 037-13050 | SILVER RFU | 24-1 | 21 | 19N | 08E | NW | NE | NE | | | | |
| 037-39233 | SILVER RFU | 14-1 | 21 | 19N | 08E | NW | NW | NW | | | | |
| 037-13116 | SILVER RFU | 29-2 | 28 | 19N | 08E | NE | NW | NW | | | | |
| 037-39221 | SILVER RFU | 21-2 | 21 | 19N | 08E | NW | SW | NE | | | | |
| 037-39210 | SILVER RFU | 27-4 | 20 | 19N | 08E | SE | SE | SE | | | | |

Exhibit E